## The People v. Moses Saunders.

*Letting houses for purposes of prostitution: Informations: Locality.* An information for letting a house knowing that the lessee intended to use it as a place of resort for the purpose of prostitution and lewdness, need not describe the locality more precisely than would be required in arson or burglary.

*Criminal letting: Date: Description: Variance.* While the precise date of leasing need not be given, except where used as matter of description, it is reprehensible to give a date which is unreasonably remote from the true one, although the variance may not be such as to lead to a reversal for receiving the proof.

*Evidence: Amount of rent: Inference of guilt.* It is error to allow a jury to infer guilt from the amount of rent received, when there is no evidence in the case to show it extravagant.    They cannot consider such a point without proof. It cannot be left to conjecture.

*Evil repute: Guilty knowledge: Evidence.* The evil repute of the lessee and of her visitors and inmates is admissible as to guilty knowledge, though not sufficient alone to show the actual use of the premises.    Without evidence either directly showing such use, or showing it by circumstances of sufficient significance, there can be no conviction.

*Letting houses for purposes of prostitution: Circumstantial evidence.* Where there was no proof that men resorted to the house, the circumstantial proof was deficient.    This law does not punish letting houses to persons of bad character, but letting for bad purposes.    And as such agreements are seldom openly declared to be for illegal purposes, the purpose may be made out by any facts clearly indicating it.

*Heard April 21 and 22.    Decided May 5.*

Exceptions from Recorder's Court of Detroit.

*Isaac Marston, Attorney General,* for the People.

*Browse T. Prentis* and *George H. Penniman,* for the respondent.

CAMPBELL, J.

Respondent was convicted under *section 7702* of the *Compiled Laws,* of letting a dwelling house, "knowing that the lessee intended to use it as a place of resort for the purpose of prostitution and lewdness." The same action contains a prohibition and penalty against knowingly permitting a lessee to use a dwelling house for such purposes, but the information was confined to the offense of letting with guilty knowledge.

The information was objected to as not describing the precise locality of the dwelling; and objection was also made to the proof of a lease dating back more than a year before the time set forth in the information.

We do not think the locality needs any more precise description under the usual practice. The name of the lessee is given. There has always been much looseness in the description of places in indictments involving crimes connected with habitations. Indictments for burglary or

arson should contain as accurate references to the place of the offense as the purposes of this statute require. But such a description as is given here would be sufficient at common law in those cases.

It was certainly a stretch of propriety to give a date of leasing so very remote from the true one. But where a date is not given as a matter of description, the practice has allowed the time to be alleged without any reference whatever to the truth. We are unable to say that the variance in the present case is such as to affect the legality of the proceedings.

The prosecution proved the lease by the lessee, Mary Lavall, who denied, however, that there was any improper use or intent. She was allowed, under objection from respondent, to state the amount of the rent. We can see no reason why any of the terms of the lease should be excluded. But in charging the jury the court allowed them to consider the amount of the rent as having a bearing on the likelihood of such a rate being paid except for improper purposes. This was clearly error, as there was no proof introduced to create a standard of comparison; and it would be extremely dangerous to leave juries at liberty to derive conclusions based upon nothing but conjecture.

Objection was also made to the introduction of testimony tending to prove that Mary Lavall was a woman of ill-repute, and had kept houses of ill repute, and that girls seen in the house were reputed to be prostitutes.

It is true that no one can be convicted upon evil repute, without proof of actual misconduct. Persons and houses may bear an ill name, and yet there may be nothing known against them which would justify the interference of the law. And the respondent could not be lawfully convicted on such testimony, without evidence of some act which comes within the statute.

But the fact that certain proof offered is not sufficient to make out a case, is no reason why it should not be

received to make out a part of it. It was necessary in this case not only to prove the intended and actual use of the dwelling for the unlawful purpose, but to show that respondent knew it was so intended when he first leased it. It is not likely that persons who come to an understanding on such a purpose will express it in writing, or even express it at all. Criminal agreements are often, if not usually, made tacitly. They can only be proved by circumstances. If a person leases a house to a woman of ill-repute, and knows of that repute, and the house is thenceforth used for unlawful purposes, and such use is known to him, these facts must be regarded as having a tendency to create belief in his guilty knowledge, or, at all events, as bearing upon that fact. All the facts cannot be brought in at once. Each is proved separately, and the order of proof must be left somewhat discretionary. If facts enough are not shown, the respondent cannot be convicted; but no relevant fact can be excluded merely because it does not by itself prove the whole case. This testimony was all relevant, and therefore properly received.

We think, however, that an error was committed in permitting a conviction when there was no evidence of the main fact.

The attention of the court was called to the question, and the judge was asked to charge that there was no evidence that defendant knew the house was resorted to, or that it was resorted to in fact, for the purposes named, but this was refused.

The testimony tended to show nothing more than the evil repute of the lessee, and of other women who had been seen in the house. There was no evidence of any acts of lewdness committed there, and no evidence that men resorted there at all. If there had been proof that the house was resorted to by men as well as women of ill-fame, the jury could draw any reasonable inference from such facts. But the law does not punish the mere letting of houses to

bad characters. It is the use of the house, and not merely the repute of its inmates, which the particular statute under consideration was intended to reach.

Whatever may be the probability that the house will be improperly used when in such hands, yet there must be clear proof of intent to satisfy the law; and the fact of such use, from which in this case the intent was sought to be derived, is not to be assumed without proof, direct or circumstantial. If the inmates commit offenses elsewhere, the landlord is not made responsible for what is not done on his premises. And the court erred in allowing the case to be disposed of without testimony tending to establish the misuse of the house.

We do not wish to be understood as holding that if there is clear proof of a letting with the distinct understanding that the house is to be used for unlawful purposes, any proof of actual use would be necessary. The crime may be complete at the time of the letting, and such is the meaning of the statute. But in the case before us there was no proof of such design that could have sufficed without the evidence of the actual use, and therefore the evidence became essential.

Upon the other principal rulings of the court, so far as they are likely to be called for on another trial, the objections taken do not seem to be based upon any substantial variance between charges asked and given. The distinctions are over-nice and lacking in importance.

For the errors before noted, the conviction should be set aside and a new trial granted, and directions given to the court below accordingly.

COOLEY, and CHRISTIANCY, JJ., concurred.

GRAVES, CH. J., did not sit in this case.