## SARGENT & MANSFIELD vs. HENDERSON.*

1. Where suit was brought against a firm for the purchase price of property bought by one of its members, and the other member denied that it was a firm transaction or was within the scope of their business, or that he or the partnership were bound therefor, it was error to charge that it was the duty of the contesting partner to keep posted as to the acts and doings of the other partner, and to govern himself accordingly. Such a charge put upon one partner the duty of watching all the acts of his copartner, whether within the scope of the partnership business or not.

2. Where a firm was formed for the purpose of growing and selling seed, and on the letter-heads of the firm they styled themselves seed-growers, and mentioned "cabbage, collard and vine seed" as the particular varieties which they proposed to raise, a purchase of large numbers of roses and carnations was not within the scope of the partnership, and one who was acquainted with the business of the firm and received orders from one of the partners in the firm name, written on paper containing such a heading, was put on notice thereof.

(a) Where one of the partners in the firm name ordered large quantities of flowers, received them at the store of another firm, of which he was a member, and disposed of them, gave a draft to the vendor for a portion of the purchase price, and subsequently paid it, and none of these facts were known to the other partner, or appeared on the books of the firm, such other partner was not bound on the ground that he ratified the purchase so made.

3. Within the scope of the partnership business, each partner is bound by the acts of the other, whether he received the benefit thereof or not; but a partner is not bound by the act of his copartner beyond the scope of the partnership.

January 30, 1888.

*This case was argued at the last term, and reargued at the present term by order of the court.

Partnership. Charge of Court. Verdict. Before Judge HARRIS. City Court of Macon. September Term, 1886.

Reported in the decision.

HARDEMAN & DAVIS, for plaintiffs in error.

STEED & WIMBERLY, for defendants.

SIMMONS, Justice.

Peter Henderson brought his action of complaint against Sargent & Mansfield, in the city court of Macon, on an account which he alleged the defendants owed him and refused to pay. The account was for 6,000 roses, 1,000 assorted carnations and 400 roses, amounting in the aggregate to $822, with a credit of $240. Mansfield, one of the firm of Sargent & Mansfield, defended, and filed (1) the plea of general issue, and (2) a plea that "neither this defendant, nor the firm of Sargent & Mansfield, nor any one authorized for it or for this defendant, purchased the goods from the plaintiff which are tho subject-matter of this suit; that the goods in said account sued upon were not contracted for by any one authorized to bind this defendant or said partnership therefor; that said contracted purchase is not within the scope of the partnership business of Sargent & Mansfield, nor has said contract to purchase ever been ratified by said Sargent & Mansfield or this defendant."

Upon the trial of the case, the jury, under the charge of the court, returned a verdict for the plaintiff. A motion was made for a new trial upon the several grounds contained therein, and was overruled by the court, and the defendants excepted.

It appears from the evidence as disclosed by this record, that the firm of Sargent & Mansfield was formed for the purpose of growing seed, such as corn, cabbage, egg-plants and beans and peas. Mansfield furnished the land, to-wit, the

enclosure in the mile track of the fair ground at Macon, and $2,000 in cash. Sargent was to plant the seed and cultivate them in his farm, and to sell the same, and was to have a general superintendence of the affairs of the farm, Mansfield's being engaged in another and different business. During the continuance of said farm, it appears that Sargent, without the knowledge or consent of Mansfield, ordered from Peter Henderson roses and carnations set out in his bill of particulars attached to his complaint. He drew a draft on the firm for $240, in part payment of the plants so ordered, which draft was paid by Sargent without Mansfield's knowing that the draft had been drawn or paid by Sargent. Subsequent to the drawing and paying of this draft by Sargent, Sargent ordered the balance of the plants. These transactions occurred in December, 1883, and January, 1884. The firm of Sargent & Mansfield was dissolved in February, 1884. It appears also from the record that the first knowledge that Mansfield had of these transactions was in June, 1884, several months after the dissolution of the firm; that he immediately wrote to Henderson and notified him that the transaction was without the scope of the business of the firm, and he would not be bound by it. It appears further that Henderson shipped the plants to Sargent & Mansfield, but when they arrived in Macon they were not carried to said farm of the firm, but were received at the store of E. M. Sargent & Co., nearly a mile from said farm of Sargent & Mansfield, and that E. M. Sargent & Co. sold a portion of the plants and delivered the balance of them to Ullman, who appears to have formed a partnership with Sargent for the purpose of growing plants. The portion that Ullman received were planted by Sargent in Ullman's land, two miles from the city of Macon, in an opposite direction from said farm of Sargent & Mansfield. This purchase of the roses and carnations, and the sale of the same and the payment of the draft, never went in the books of Sargent & Mansfield, but upon the books of E. M. Sargent & Co.

The letter-heads used by the firm contained the following:

· Sargent & Mansfield,       Cabbage, collard and vine seed.
    Seed growers,
      P. O. Box 367,
   Macon, Ga., U. S. A.

Under these letter-heads E. M. Sargent, using the firm name, ordered these goods.

1. The third exception is, that the court charged as follows: " I charge you further that it was the duty of Mansfield, if he was in partnership with Sargent, to keep posted as to the acts and doings of Sargent, and to govern himself accordingly." We think the exception to this part of the charge is well taken. In our opinion, it puts a duty upon Mansfield which the law does not put. In effect, it instructs the jury that if there was a partnership between Sargent and Mansfield, it was Mansfield's duty to watch all the actions of Sargent, whether within the scope of the partnership or not. It compelled Mansfield to keep his partner, Sargent, under constant surveillance, not only as to the acts of the partnership, but as to all of his acts, and the inference from the charge is, that unless he "kept posted " as to all of Sargent's acts, he was bound thereby, whether the acts were within the scope of the partnership or not. The evidence in this record discloses the fact that Sargent was a member of two other firms, one for the purpose of buying and selling seed of all kinds, the other for the purpose of raising flowers. It would have been a great hardship on Mansfield to require him to " keep posted " as to all the acts of Sargent in connection with his business, as an individual or as a member of the other two firms; nor do we think the law imposes this duty upon a partner.

2. The main question in this case is, whether Mansfield is liable for these articles sued for. and whether the contract made by Sargent for their purchase was within the scope of the partnership. We do not think he is liable,

under the facts as disclosed by the evidence in the record. The partnership was formed for the purpose of growing seeds and selling the same. On the letter-heads of the firm, they styled themselves "seed growers," and mention "cabbage, collard and vine seed" as the particular varieties which they proposed to raise. That was a specific and particular kind of business, and belonged properly to agriculture. The plants ordered by Sargent, as a member of the firm of Sargent & Mansfield, were roses and carnations. These articles have no connection with the business of agriculture, but belonged to another department, to-wit, floriculture. It seems, therefore, to us that any person who was acquainted with the business of Sargent & Mansfield as seed growers for agricultural purposes, as Henderson seems to have been, from this record, ought to have known that an order for $822 worth of flowers would be beyond the scope of a partnership for growing seed for agricultural purposes. The plaintiff, in his own testimony, seems to have thought this, for he says that he thought perhaps they had enlarged their business.

It was argued before us that, even though this view might be true, the jury had found by their verdict that Mansfield had ratified these acts, first, by his long acquiescence, and secondly, by the fact that a draft for a part of these goods had been paid by Sargent & Mansfield. We think the evidence clearly shows that Mansfield never knew of this transaction until some months after the dissolution of the firm. Sargent made a contract beyond the scope of his authority, and never revealed it to Mansfield. The goods were not received by the firm of Sargent & Mansfield where it was likely Mansfield might have seen them. They were taken by Sargent to the store of E. M. Sargent & Co., and there disposed of. There was nothing, so far as appears from the evidence in the record, to put Mansfield on any sort of notice that his partner was going beyond the scope of the partnership. The evidence shows also that he knew nothing of the draft or of its payment

by Sargent, and that it was never put upon the books of Sargent & Mansfield, but upon the books of E. M. Sargent & Co. The roses and carnations were not planted upon the farm of Sargent & Mansfield, but upon the farm of Sargent & Ullman, which was two miles from the farm of Sargent & Mansfield, in an opposite direction. We cannot see, therefore, how Mansfield could have ratified these acts, unless he had first known something of them, or could have known of them by exercising his rights as a partner. It seems from the record that Sargent kept all these unwarranted transactions concealed from Mansfield, and, as said before, Mansfield knew nothing about them until long after the dissolution of the firm.

3. But it is claimed that Mansfield ought to be held liable, because he formed this partnership with Sargent, and thereby held him out to the world as an honest and responsible man, and for this reason he ought to suffer instead of Henderson, who is claimed to be an innocent third party. That is a sound proposition of law, but we do not think it is applicable to the facts of the case. If Sargent had acted within the scope of the partnership, whatever he did Mansfield would have been bound by, whether Mansfield got the benefit of his contracts or not. If Sargent had cheated and defrauded third parties, and had acted within the scope of the partnership, Mansfield would have been bound, because he was Mansfield's agent to act in all matters within the scope of the partnership. We think we have shown that this transaction was beyond the scope of the partnership. If it was, then we apprehend no one will contend that the partner is bound by the acts of his agent when the agent exceeds his authority. Sargent having exceeded his authority, making this contract beyond the scope of the partnership, we do not think that Mansfield, the other partner, is bound thereby.

Judgment reversed.