## SPARKS *v.* FLANNERY & COMPANY.

1. As a general rule cotton-factors do not buy and sell on their own account. It therefore follows that the sale of cotton, in the name and on the account of the partnership by a member of a partnership formed for the purpose of carrying on the business of cotton-factorage, is presumptively without the scope of the partnership business. This presumption may, however, be overcome by proof of consent or ratification by the other partner, or by proof of custom authorizing such transaction in the place where the partnership was located.

2. Each partner is presumed to know what appears upon the partnership books. It follows, therefore, that where there was entered upon the books of the partnership a transaction which was beyond the scope of the partnership business, after the lapse of a reasonable time each partner will be presumed to know of such transaction, and upon a failure to re-

pudiate the same promptly, upon the lapse of such time will be held to have ratified the act of the partner who had exceeded his authority. In the present case it appeared from the evidence that the transaction which was beyond the scope of the partnership was entered upon the partnership books. The books themselves not being in evidence, and there being nothing in the evidence to indicate that an examination thereof would not have disclosed the true nature of the transaction, it will be presumed that the entry was made in such a manner that the truth of the transaction would have been apparent.

3. The case was fairly submitted to the jury. The evidence authorized the verdict, and there was no error committed which would require the granting of a new trial.

Argued February 5, — Decided May 25, 1898.

Complaint on account. Before Judge Ross. City court of Macon. June term, 1897.

*Dessau, Bartlett & Ellis*, for plaintiff in error.
*Chambers & Jordan*, contra.

COBB, J. Flannery & Company sued W. B. and O. G. Sparks Jr., doing business under the firm name of W. B. & O. G. Sparks, upon an account for money advanced by the plaintiffs on cotton consigned to and sold by the plaintiffs on commission for account of defendants' firm, such advances being made in payment of drafts drawn in the firm name. The transactions extended through a period beginning in September, 1892, and ending in February, 1894, and the accounts contained credits of amounts realized from time to time during that period from the sale of the cotton. The action was brought February 9, 1897. A defense was filed by W. B. Sparks, who set up therein that the transactions upon which the account was based were unauthorized by him, and were not within the legitimate scope of the partnership business of W. B. & O. G. Sparks, their business being that of cotton-factors, and being restricted by the contract of partnership to the sale of cotton on commission, the storage of cotton, and the making of advances thereon, and not including the consignment of cotton for sale for their own account; and that he knew nothing of the transactions in question until the suit was brought; also, that so much of the account as appeared therefrom to have been due on November 26, 1892, was barred by the statute of limitations. There was a verdict

for the plaintiffs for the amount sued for. W. B. Sparks made a motion for a new trial, which was overruled, and he excepted.

1. It appeared from the evidence, that W. B. and O. G. Sparks had been for some time engaged in the business of cotton-factors as partners, that the partnership had been dissolved, but that no notice had been given to their customers of this fact, and that O. G. Sparks continued the business in the firm name with the full knowledge and consent of W. B. Sparks, although W. B. Sparks had no interest in the transactions of the firm. It was after the dissolution of the partnership that the transactions with the plaintiffs took place. Such being the fact, W. B. Sparks, while not a partner as between himself and O. G. Sparks, was still a partner as to the world, and was as fully bound by all the transactions which were within the scope of the partnership as if no dissolution had taken place. In dealing with the case, therefore, W. B. Sparks will be considered as if he were an active and interested partner in the business. The partnership between them was for the purpose of carrying on the business of cotton-factors. It is well settled that the business of a cotton-factor is to buy and sell cotton for another on commission, and that as a general rule a cotton-factor does not buy and sell on his own account. He may buy and sell in his own name for a concealed principal, but as a factor he acts simply for a principal either disclosed or concealed. See Slack v. Tucker, 23 Wall. 321, 330; Fordyce v. Peper, 16 Fed. Rep. 516, 520; Story on Ag. § 34. That a member of a partnership of cotton-factors buys cotton in his own name is not evidence that he is doing an act outside of the business of the partnership. As above stated, it is common for him to use his own name in the affairs of his principal, and therefore buying and selling in his own name would presumptively be a contract as factor. But if the purchase or sale be by one of the partners not only in his own name but in his own behalf and interest and he be representing no principal, such a transaction would not be within the legitimate scope of the partnership business. Of course what is here said is subject to the qualification, that the scope of the partnership business of cotton-factors is to be determined to a large extent by the customs of persons engaged in such business at the place where the partnership is located, and also by

the custom of the particular partnership.  As stated in 1 Bates on Partnership, § 315, "scope may be generally described as including what is reasonably necessary for the successful conduct of the business, measured by the nature of the business, and the usages of those engaged in the same occupation in the same locality, and subject to be enlarged also by the known habits and conduct of the particular firm itself." See also 17 Am. & Eng. Enc. L. 989; Lindley on Part. 124; Mechem on Part. §166.

It appearing in the present case that cotton-factors in Macon, Georgia, where the firm of W. B. & O. G. Sparks did business, were not accustomed to buy and sell cotton on their own account, and it further appearing that it was not the custom of this firm to do so, it follows that when O. G. Sparks placed with the plaintiffs in Savannah, Georgia, for sale on account of the firm, the cotton upon which the plaintiffs made the advances and from which the losses which are the subject-matter of this suit resulted, these transactions were not within the scope of the partnership, as that was determined by the agreement between the parties, by the custom of the place where the partnership was located, and by the known habit of the partnership itself.  If the firm had sold cotton to the plaintiffs and had bought cotton from them, even in their own name, then the partnership would have been bound by the transaction, because, under such circumstances, the plaintiffs would have had a right to presume that they were dealing with the firm as agents of an undisclosed principal, such being legitimately within the scope of this business; but as cotton-factors are mere agents and are not authorized to delegate authority to another agent, the moment that the plaintiffs entered into a contract with the firm to sell cotton on their account, they were put on notice that the firm was not dealing in behalf of a concealed principal, but were dealing in their own behalf, and therefore that the transaction in question was not within the scope of the partnership with which they were dealing.  "A factor is employed because trust and confidence are reposed in his ability and integrity, and the execution of this trust and confidence can not, in general, be delegated to another." Mechem on Ag. § 998, and cases cited.  Story on Ag. § 34 a.

2. But the claim is made in the present case, that the conduct of W. B. Sparks was such that he would be held to have ratified the unauthorized act of his partner. "The extent of liability of such firm for the acts of its members depends upon the nature and scope of the business; and where one member exceeds the usual power of such partnerships, the party dealing with the member must show that he had authority to bind the firm, or that the members of the firm acquiesced in the act, before the firm would be bound thereby." Prince *v.* Crawford, 50 Miss. 344; Mechem on Ag. § 276; Selden *v.* Bank of Commerce, 3 Minn. 166, 178; Davis *v.* Blackwell, 5 Bradw. (Ill.) 32; Reitz *v.* Martin, 12 Ind. 306, s. c. 74 Am. D. 215; Sweeter *v.* French, 2 Cush. 309. The case stands thus: The plaintiff sued the firm of which the defendant was a member, upon a contract alleged to be within the scope of the firm business. One of the defendants pleaded that he was not bound by the contract, because it was not within the scope of the partnership business. Upon this issue the trial was entered upon. The burden was upon the plaintiff, not only to show an indebtedness, but to show an indebtedness for which the firm would be liable. This was shown by proof of facts from which the jury could infer liability on the part of the firm on account of the transactions. The evidence showed transactions which were presumptively within the scope of the partnership business. This prima facie case was met by proof on the part of the defendant that the transactions were not within the scope of the business. To this the plaintiff replied that the transactions were entered upon the books of the partnership, that they extended over a period of nearly two years, that all the members of the firm were chargeable with notice of whatever appeared upon the books, and that a failure to repudiate the transactions within a reasonable time amounted to a ratification of them. Had the defendant produced the books and from them shown that the transactions were entered in such a way that, had he examined them, he would have been unable to discover that there was no principal and hence that they were beyond the scope of the business, the jury would have been warranted in finding that he was not chargeable with any

such ratification as would bind him in law. Where a party relies upon an implied ratification by one member of a firm, he must show such a state of facts as would have put such member on inquiry as to the nature of the transaction in question, and must also show that such inquiry would have led to a discovery of the exact nature of the unauthorized act. Mechem on Ag. §§ 128, 129, and cases cited.

The books of the firm not being in evidence, it is to be presumed that the entries were of such a character that an examination would have disclosed the exact nature of the transactions, and that either partner examining the books could have seen that the partnership was engaging in a business outside of the scope of the business. While the transactions were known to O. G. Sparks, and he is not attempting to avoid liability on account of the same, it is claimed by W. B. Sparks that he was entirely ignorant of them until service was had upon him in this case, which was about three years after the transactions with the plaintiffs had closed. When the plaintiffs proved that the transactions were entered upon the books of the firm, the burden was cast upon the defendant to show that the entries were not of such a character as that an examination of the same would have led to a discovery of the nature of the transactions in which O. G. Sparks was engaged. He having failed to do this, and a sufficient time having elapsed since the transaction began for him to have made an examination of the books in which they were entered, the jury were authorized to presume that W. B. Sparks knew of the transactions, and that his failure to repudiate them within a reasonable time amounted to a ratification of the same. The means of knowledge was at hand, and it was negligence to close his eyes to that which was staring him in the face. He can not sit silently by for a number of years, and only when loss has been sustained plead that he was ignorant of the nature of transactions out of which the loss arose. A state of facts was shown from which the law would presume knowledge, and therefore he will be required to pay the debts of the person whom he has held out to the world as his partner. This is not a case of one partner spying into the business of another

partner and keeping a watch on him to see whether he is doing anything which he should not do as a partner. No partner is expected to do this. He has the right to presume that the other partner will keep within the scope of the business; but books are kept by a partnership for the purpose of showing the history of the transactions in which the partnership is engaged. They are kept for the information and use of the partnership; and the partners are not only allowed to examine them, but are expected to do so, and from them can ascertain what the partnership is doing in the firm name. When the books show a transaction entered in the firm name, it is, in contemplation of law, known to the partners, at least after the lapse of a reasonable time after it is entered on such books; and after the lapse of a reasonable time this presumptive knowledge becomes, in effect, actual knowledge, and that which with actual knowledge would amount to a ratification of an unauthorized act would with this presumptive knowledge amount to a ratification. *Sibley* v. *Am. Ex. Bank,* 97 *Ga.* 127.

3. The case was submitted to a jury substantially upon the principles above outlined. We do not think there was any error in the charges or refusals to charge, complained of in the motion for a new trial, which is of such a nature as would require the granting of a new trial. The assignments of error relating to the statute of limitations seem to have been abandoned; but if it were necessary to pass on them, it would be seen that the case on this point is controlled by the doctrine of mutual dealings. See *Gunn* v. *Gunn,* 74 *Ga.* 555.

*Judgment affirmed. All the Justices concurring.*