MURPHEY, survivor, for use, etc., *v.* BUSH *et al.*, administrators, and *vice versa.*

1. Under the Civil Code, § 5269, while an agent of an interested party may be incompetent to testify as to certain matters, he is not rendered incompetent to testify at all merely because the case is being defended by the legal representatives of a deceased party ; and when assignments of error are sought to be made upon rulings of an auditor as to the admissibility of testimony by such a witness, the evidence admitted or rejected must be set forth in the exceptions filed to the auditor's report.
2. Where one partner, without the knowledge of his copartner, misappropriates partnership goods and applies them to the payment of an individual debt, the latter is under no duty, relatively to the person whose debt is thus discharged under an agreement between him and the other partner, to exer-

cise diligence in keeping informed as to partnership transactions; nor is he estopped from asserting his rights in the premises simply because he has failed to avail himself of his opportunities to know that his partner was misapplying the partnership assets.

3. When an auditor appointed to take an accounting between partners omits to include in his calculations an item which the undisputed evidence shows should be entered to the credit of one of the partners, and he takes proper exception to this omission on the part of the auditor, the exception should be sustained by the court as matter of course.

4. Where, after a partnership is dissolved under an agreement whereby one of the partners takes all of its assets and obligates himself to apply the same to the discharge of the indebtedness of the firm, he disputes his liability upon a valid demand against the firm created by his partner, and entered into litigation which terminates adversely to him, he is not entitled to credit for any of the expenses of the litigation so brought about, or for additional interest on the debt accruing pending the litigation.

5. In an accounting between partners, cash credits in favor of one, appearing on books kept by or under the supervision of the other, are to be allowed the former, when the books are introduced in evidence and there is no dispute as to the entries appearing thereon.

Argued February 13, — Decided May 13, 1905.

Exceptions to auditor's report. Before Judge Reagan. Monroe superior court. May 25, 1904.

*J. F. Redding* and *W. W. Lambdin,* for plaintiff.
*Robert L. Berner,* for defendants.

EVANS, J. The firm of W. R. Murphey & Company was composed of W. R. Murphey, J. T. Murphey, and others. This firm was largely indebted to Ambrose Murphey, and in 1885 the members of the firm sold out its business to him in part payment of its indebtedness to him. A partnership agreement was entered into on August 31, 1885, between J. T. Murphey and Ambrose Murphey, by the terms of which the latter was to furnish the capital, to consist of the depleted stock of goods of W. R. Murphey & Company, valued at $4,730, and other goods to supplement the stock, not to exceed $2,500, in value. The stock of merchandise, as thus supplemented, was to be the separate property of Ambrose Murphey. The storehouse was also to be furnished by him. J. T. Murphey was to personally superintend the business, keep the books, buy all goods, and hire and pay such assistants as might be necessary to carry on the business. No firm debts were to be contracted beyond the supplemental purchase of $2,500 of goods, except by the express agreement of both partners; nor were any

goods to be sold on credit, except upon the express understanding of both parties. The incidental expenses of the business, such as coal, lights, stationery, etc., were to be paid out of the business. Neither partner was to draw out of the business, whether in goods or money, more than $100 per month, unless by consent of the other partner. The profits of the business were to be equally divided between the partners, and were to be ascertained as follows: "Stock shall first be taken, including money, notes, and accounts; then enough goods shall be set aside for Ambrose Murphey equal in value at cost to amount to capital stock put into business by him; and if not enough goods to replace the capital stock, then more shall be replaced with solvent notes and accounts; and if not enough notes and accounts, then by any other property of business; then the balance, whether in goods, notes and accounts, or money, or other property, to be divided equally between parties." Beginning in September, 1885, and extending over a period until February 7, 1887, W. H. H. Bush bought goods from the firm of J. T. Murphey & Company to the amount of $1,198.33. The various purchases were charged on the books of the firm to Bush. The firm of J. T. Murphey & Company was dissolved by mutual agreement of the partners on February 9, 1887, and by the terms of the dissolution Ambrose Murphey was to take the stock of merchandise and notes and accounts, settle all claims against the firm, and if any balance remained it was to be equally divided between J. T. and Ambrose Murphey, after deducting the amount of the capital invested by the latter. On February 6, 1888, J. T. Murphey & Company, for the use of Ambrose Murphey, brought suit in the superior court of Monroe county against W. H. H. Bush for the principal sum of $1,198.33, alleged to be due for goods purchased of J. T. Murphey & Company and set out in an attached bill of particulars. The defendant filed a plea of the general issue, and subsequently amended his plea by averring, in substance, among other things, that the plaintiff was not entitled to recover, because of an agreement with J. T. Murphey, made at the time the goods were purchased, that the defendant was to purchase the goods and the amount of the purchases was to be in settlement of a debt which the firm of W. R. Murphey & Company was due him, which debt was in excess of the value of the articles purchased, and that in a fair accounting

between Ambrose and J. T. Murphey, Ambrose Murphey had received from the assets of the firm of J. T. Murphey & Company sufficient funds to discharge all the firm debts and leave a balance due J. T. Murphey, sufficient to pay the account sued on; wherefore defendant prayed an accounting between J. T. and Ambrose Murphey, and if from such accounting it appeared that Ambrose Murphey was indebted to J. T. Murphey, that the amount of the indebtedness be applied to the payment of the account sued on. The case was referred to an auditor, but before a hearing before him was had, Bush died and his administrators were made parties defendant in his stead. The auditor reported that the plaintiff was entitled to recover $594.59 principal, besides interest. Both the plaintiff and the defendants filed exceptions of law and of fact to the auditor's report. While the judge of the superior court had these exceptions under consideration, Ambrose Murphey died, and the suit afterwards proceeded in the name of J. T. Murphey, as surviving partner, for the use of the administrators of the estate of Ambrose Murphey. The court overruled the exceptions of law, disapproved the exceptions of fact, and made the report of the auditor the judgment of the court. Plaintiff and the defendants sued out bills of exceptions complaining of the judgment. The questions presented by the two bills of exceptions are so intimately related that they may with propriety be considered together.

1. It appeared on the hearing before the auditor that when the firm of J. T. Murphey & Company was dissolved, Ambrose Murphey was sick, and his son, T. E. Murphey, represented him as agent in taking charge of the assets of the firm of J. T. Murphey & Company and perfecting the agreement of dissolution between the partners. When T. E. Murphey was offered as a witness in behalf of the plaintiff, counsel for the defendants insisted that he was an incompetent witness, having acted as agent for Ambrose Murphey, for whose use the action was brought, and Bush, the original defendant, having died and then being represented by his administrators. The auditor held that these facts did not preclude the witness from testifying in the case, and exception to this ruling was taken. Under the evidence act of 1889 (Civil Code, § 5269), the witness was competent to testify as to any matters relevant to the case, save only as to any transactions or

communications he may have had, while acting as agent, with the deceased Bush.      Accordingly, this general objection to the competency of the witness was not well taken.      If, during his examination, he was called on to testify as to any matter to which his partial disqualification as a witness applied, proper objection should have been raised; and if the auditor overruled the objection, an exception to the ruling, setting forth the testimony admitted over objection, should have been filed.  *Rusk* v. *Hill*, 117 *Ga.* 723 (5), 730, and cit.; *Trentham* v. *Bluthenthal*, 118 *Ga.* 530 (2).  There is no attempt in the present case to point out any testimony of this witness which was open to objection.      This being so, it is not the province of this court to search the record with a view to discovering whether the examination of the witness was confined to matters as to which he was competent to testify. *Hudson* v. *Hudson*, 119 *Ga.* 638; *Butler* v. *Railway*, Id. 959.

Another exception of law filed to the auditor's report was that he " erred in not passing upon the objection of the defendants to the testimony of Ambrose Murphey, which was that he was an incompetent witness for the reason that Bush, the opposite party, was dead." What has just been said in regard to the competency of T. E. Murphey as a witness and the ruling of the auditor in regard thereto disposes also of this exception.

The plaintiff excepted to the ruling of the auditor that T. E. Murphey " was incompetent, on account of the death of W. H. H. Bush, to testify to anything except what would be contradictory to the evidence of Bush delivered at a former trial of the case, a brief of which was introduced in evidence before the auditor." How this ruling operated to the prejudice of the plaintiff does not appear, as the exception taken to the auditor's report does not disclose what testimony the plaintiff sought to elicit from the witness in addition to that which the auditor admitted.      This being so, neither the trial court nor this court could undertake to say that the ruling of the auditor was attended with any injury to the plaintiff.  *Allen* v. *Kessler*, 120 *Ga.* 319.

2. The evidence shows that J. T. Murphey had exclusive management of the affairs of the firm of J. T. Murphey & Company. At the time he privately agreed to pay Bush the debt of the firm of W. R. Murphey & Company by allowing Bush to take goods to that amount out of the store of J. T. Murphey & Company, the

other partner, Ambrose Murphey, was not informed of this arrangement. The stock of merchandise belonged to Ambrose Murphey, and, without his consent, J. T. Murphey was wholly without right or authority to enter into any such arrangement with Bush. This fact Bush was bound to know; for one partner can not use partnership assets with which to pay his individual debts. The defendants, however, undertook to show that Ambrose Murphey subsequently learned of the agreement between his partner and Bush and impliedly ratified the same by sitting quietly by and raising no objection to the carrying out of the same. But this contention was not satisfactorily established, and the auditor was fully justified in finding that Ambrose Murphey did not know of the agreement made with Bush until a month or more after the partnership was dissolved. Upon the hearing in the superior court, the defendants presented to the judge some newly discovered evidence in this connection, and asked that the same might be considered by him in passing upon their exceptions to the auditor's finding of fact. This newly discovered evidence consisted of an affidavit of one Allen Fambrough, to the effect that W. R. Murphey & Company was indebted to him at the time that firm ceased to do business; that J. T. Murphey agreed to pay the debt by allowing him to get goods to the amount thereof at the store of J. T. Murphey & Company, and he accordingly traded at the store under this understanding, which fact became known to Ambrose Murphey, who spoke to deponent about the arrangement and told him to go ahead and buy goods thereunder; and that during the conversation Ambrose Murphey remarked that he knew deponent and others were buying goods the same way, and that "somebody would catch hell about it yet" — evidently meaning that he intended to hold his partner, J. T. Murphey, strictly accountable for the goods thus disposed of without right or authority. This conversation took place, deponent stated, during the summer preceding the dissolution of the firm of J. T. Murphey & Company in February, 1887. Apparently this evidence might, by the exercise of proper diligence on the part of the defendants, have been procured before the case was heard by the auditor, as J. T. Murphey was aligned on their side of the controversy, appeared as a witness in their behalf, and, of course, knew of the arrangement made with Allen Fambrough. But however this may be, we think

the judge properly declined to regard this evidence as of sufficient weight to demand or influence a finding other than that reached by the auditor, which seems to be in accord with the real truth of the matter. While Ambrose Murphey may have known that Fambrough and others were getting goods at the store under an arrangement with J. T. Murphey which he was unauthorized to make with them, and may have concluded not to protest against this practice so far as they were concerned, it does not follow that Ambrose Murphey knew that Bush was getting goods in the same way and impliedly assented that so large a debt as $1,198 should be discharged in this manner, that amount being out of all proportion to the sum per month which J. T. Murphey was, under the articles of partnership, authorized to withdraw from the business. It is to be noted that the witness was not in a position to swear that Ambrose Murphey knew anything about the arrangement made with Bush or had any reference to him when he said he knew Fambrough "and others" were getting goods at the store in payment of debts due to them by the firm of W. R. Murphey & Company, with the payment of which Ambrose Murphey had no concern. Who were the other persons referred to is purely a matter of conjecture. Ambrose Murphey is now dead, and can not meet this pure conjecture by explanatory testimony; and to allow it to outweigh his positive sworn statement that he did not in point of fact know that Bush was being sold goods under the agreement set up by him, until after the dissolution of the partnership, would be arbitrary and wholly unwarranted.

Counsel for the defendants insist that even though Ambrose Murphey may not have actually known of the arrangement with J. T. Murphey under which Bush bought the goods, yet the books of the firm disclosed the transactions, and Ambrose Murphey might have known, was bound to take cognizance of the facts, and could not, after negligently failing to inform himself as to how the business was being conducted, be heard to assert that his partner acted beyond the scope of his authority. In support of this position the case of *Sparks* v. *Flannery*, 104 *Ga.* 323, is cited and relied on. In that case one of the members of a partnership sought to escape liability on a contract made in behalf of the firm by his copartner, after the partnership had received the fruits of the contract, upon the technical ground that the con-

tract was not one within the scope of the partnership business; that his partner therefore was without authority to bind the firm thereby, and he could not be held personally liable, because he did not authorize the making of the contract nor have any knowledge concerning it until after suit was brought. The transactions had under the contract covered a period of nearly two years and were duly entered upon the books of the firm; and it was held that as the partner who sought to repudiate the contract had full opportunity to know the facts, but neglected to inform himself as to the manner in which the business was being conducted and remained quiescent for so long a period and until the transactions came to a close, he was estopped from urging the technical defense set up by him, as the law would impute knowledge to him of what he should have known. The present case is, upon its facts, quite different. The plaintiff does not seek to repudiate a contract, made in behalf of the partnership, upon the technical ground that such a contract was not within the scope of the partnership business; but the plaintiff does repudiate a private contract made with Bush by one partner, for his individual benefit, whereby partnership assets were misappropriated and a fraud perpetrated upon the other partner. The doctrine of equitable estoppel has no application. Unless, as matter of fact, Ambrose Murphey assented, expressly or impliedly to the sale of the goods to Bush on the terms agreed on between him and J. T. Murphey, Bush was a wrong-doer and became liable as such. Neither Bush nor his legal representatives can be heard to say that Ambrose Murphey was bound to use due diligence in discovering the fraud that was being perpetrated upon him, and if he neglected to use the means at hand of discovering it, he is estopped from complaining thereof, since it has been fully consummated. He was not bound, as against Bush, to watch his partner and see that he conducted the business as he should have done. *Sargent v. Henderson*, 79 *Ga.* 268. The goods were, in the first instance, charged upon the books of the firm against Bush. By an undated entry, which was presumably made by J. T. Murphey just before the dissolution of the firm took place, the account of Bush was charged against him; but the evidence shows that this fact was not discovered by Ambrose Murphey or his agents until some weeks after the dissolution and after the books were turned over

to him.   He lost no time in then repudiating the agreement be-
tween his partner and Bush, and commenced suit to recover the
value of the goods sold thereunder.   Only upon the idea that
Ambrose Murphey became aware of this agreement shortly after
it was made and impliedly gave his assent thereto, were the de-
fendants entitled to a finding in their favor upon the issue
whether or not he had ratified the unauthorized acts of his part-
ner, and upon this issue the finding of the auditor was rightly
upheld by the court below.

3.  As has been stated, the defendants relied on the additional
defense that Ambrose Murphey had taken possession of all of the
assets of the firm upon its dissolution, and upon an accounting
with his partner he would be found to be indebted to the latter
in an amount sufficient to pay, in whole or in part, the debt of
$1,198.33.   The books of the firm were introduced in evidence,
and there appeared on them an item of indebtedness to W. R.
Murphey & Company of $525.66 which had not been marked
paid.   While testifying as a witness, J. T. Murphey was asked to
explain this item, and he did so by saying that it represented
money which went into the business of J. T. Murphey & Com-
pany and was used by that firm, and that the firm had not, as
such, settled the indebtedness, though he had, after the dissolution
accounted to W. R. Murphey & Company for that amount out of
his individual funds, and was entitled to credit therefor.   When
asked why the payment had not been entered on the books, he
replied that the books had been turned over to his partner and he
did not feel at liberty to make any entry thereon unless his part-
ner was present, and he did not consider his partner had anything
to do with the matter.   So far as appears, Ambrose Murphy did
not dispute the liability of the firm for this indebtedness, and the
testimony of J. T. Murphey was the only evidence introduced in
regard to the same.   It does appear that before the dissolution,
he prepared a statement intended to show the liabilities of the
partnership, and that the indebtedness to W. R. Murphey & Com-
pany was not included among the liabilities shown by this state-
ment; but the dissolution was not made upon the faith of this
statement being correct and including all liabilities, the agreement
being that Ambrose Murphey should take charge of all the assets,
discharge all just indebtedness of the firm, and then account to

J. T. Murphey for such interest as he had in the partnership funds. The auditor .did not, as we' think he should have done, give credit to J. T. Murphey for the amount thus expended by him ; nor does the auditor in his report refer to this item of $525.66 or explain why it was eliminated from his calculations. One of the exceptions filed to his report makes complaint that he ignored this item, notwithstanding there was no conflict in the evidence as to its being a just indebtedness of the firm which had been discharged by J. T. Murphy. The exception was well taken and should have been sustained by the court.

4. Another exception to the auditor's report was that in taking into account an indebtedness known as the Farley fi. fa., which had been discharged by Ambrose Murphey, the auditor gave him credit for only the principal of the debt. The auditor in his report states that he did so advisedly, being of the opinion that it would be unfair to allow interest to date of settlement of the fi. fa., when Ambrose Murphey had in his hands assets of the firm with which to discharge this indebtedness. It appears that the debt grew out of a cotton transaction ; that Ambrose Murphey denied personal liability or liability on the part of the firm, and accordingly. litigated the matter. The controversy was decided adversely to him; so it would seem evident he was not justified in delaying settlement of the debt and incurring the costs of suit and additional liability for accruing interest and attorney's fees.

5. There were a number of other exceptions to the auditor's report, but, save as to one of them, counsel on the argument before this court did not insist on their assignments of error touching the ruling of the judge in passing thereon. Complaint is made that in determining how the personal account of Ambrose Murphey with the firm stood at the date of the dissolution, the auditor failed to take into account various cash items, amounting in the aggregate to $666.35, with which Ambrose Murphey had been credited on the books of the firm. The books, which had been kept by or under the supervision of J. T. Murphey, were in evidence and showed these credits, and there was no testimony going to show that Ambrose Murphey was not entitled to such credits, nor was the correctness of the entries thereof on the books questioned. Accordingly, we hold that the court should have sustained the exception taken to the failure of the auditor to take

into consideration the credit side of Ambrose Murphey's personal account with his firm; and the case is remanded to the trial court in order that proper steps may be taken to correct this omission, as well as the failure of the auditor to credit J. T. Murphey with the item of $525.66 above mentioned.

*Judgments affirmed, with directions.    All the Justices concur, except Candler J., absent, and Lumpkin, J., not presiding.*