### 32610. ROGERS *v.* THE STATE.

DECIDED NOVEMBER 18, 1949. REHEARING DENIED DECEMBER 10, 1949.

*Mitchell, Mitchell, Bolling & Mitchell,* for plaintiff in error.
*Warren Akin, Solicitor-General,* contra.

MacINTYRE, P. J. The defendant, L. C. Rogers, was indicted in the Superior Court of Murray County for the larceny of 300 pounds of D. P. & L. cotton, the property of J. C. Smith and of the value of $45. The defendant was tried, convicted, and sentenced. His motion for a new trial was overruled, and he excepted. ■ The jury was authorized to find: The prosecutor, J. C.

Smith, had had some cotton stolen from him on the night of October 7, or during the early morning of October 8, before 7 o'clock, at which time he discovered his loss; that the cotton had been picked on the 7th and had been left in the field in loose form. Prior to the loss of the cotton and within twenty-four hours of the time the cotton was stolen, it had rained in the vicinity of the field from which the cotton was stolen. The tracks of two men led from the place where the prosecutor had left the cotton in the field to a piece of woodland on the side of the public dirt road which skirted the cotton field. The sheriff and a State highway patrolman investigating the matter discovered a place where a car had turned out of the public dirt road into the woodland, and at this point they discovered that one of the tires of the car which had turned out of the road into the woodland made a peculiar track, as though a groove had been cut entirely around the tire. In the soft dirt where the car had turned out of the road, this car tire had left a ridge-like impression that was peculiar and distinctive. The tracks leading from the point where the cotton had been stolen led to the point where the car with the peculiar tire mark had been parked, and the investigators found loose cotton scattered about on the ground at that point. In searching for the car that made this peculiar tire mark, the investigators followed the tracks of the car to where the car had turned out of the road into the yard of a Mr. Tatum. Tatum informed them that the tracks had been made by the automobile in which the defendant Rogers and one Granville Smith had been riding when they came to his house to discuss purchasing an automobile which he had for sale. From the Tatum house the investigators went to the defendant's house and found the defendant's car, and upon examination of the tires discovered the tire which made the peculiar and distinctive track and which fitted a plaster of Paris cast (which the State patrolman had made of the track at a point in the public road where the car that made the peculiar track "came back into the road up there where the cotton was stolen"), (He testified: "When this tire came back into the road up there was soft ground there, and it made an imprint of the tire—I mixed up the plaster of Paris in a thin solution and poured it in the tracks, and when it sat up and got dry, we picked it up

and there is the imprint. You will notice that this groove is over here to one side—it is not on the center, and it is the same tire that made the tracks. I got that tire off of L. C. Rogers' car. I made that cast where the cotton was stolen, from where the car was parked.") (Both the cast and the tire were introduced in evidence for the jury's examination.) The jury was further authorized to find that Rogers was present at the time of the examination of the tires at his home by the investigators. The investigators did not have a warrant for the arrest of Rogers, and the sheriff went back to town to obtain one, but when he returned Rogers was absent and could not be found, although the sheriff searched for him off and on for almost a month, and he was never arrested until some thirty days after the cotton was stolen, when he, in company with his attorney, surrendered to the sheriff and was released on bond after a commitment hearing. At the time he disappeared he had not been informed of his impending arrest or of the theft of the cotton. Locks of cotton were found in the back of the defendant's car and in the "turtle shell" of the car when the officers took charge of it; the cotton in the car was of the D. P. & L. variety grown by the prosecutor. The cotton stolen from the prosecutor had been grown on red-clay land and bore some red-clay stains, and if dragged across the field would have been stained with red clay even more. The next day after the cotton was stolen, some D. P. & L. cotton bearing red-clay stains was found in a wagon back of the home of Granville Smith (Granville Smith was the man who had driven with the defendant to the Tatum house on the day before the cotton was stolen). The land upon which the defendant lived and upon which Granville Smith lived was not red-clay land, but "slatey gray" land.

It seems to us that, while no one of the circumstances here would have been sufficient to prove the guilt of the defendant, yet all of them taken together authorized the jury to infer that the defendant was guilty as charged. The cotton found in the defendant's car was of the same variety as that lost by the prosecutor, and on the day before the cotton was stolen the defendant and Granville Smith had been in the vicinity of the field from which the cotton was stolen when they had driven to Tatum's house. There were, judging from the two sets of tracks

in the cotton field, two persons who participated in the theft of the cotton; the cotton found at Granville Smith's was of the variety lost by the prosecutor, and bore red-clay stains as did the prosecutor's cotton. . The defendant had fled following the examination of the tires on his car, although nothing was said to him concerning the theft of the cotton and his impending arrest, and he could not be located for a period of about a month or until he surrendered in company with his attorney; several witnesses testified that the loose cotton was in the back of the defendant's car; some testified simply that it was loose cotton; others testified that it was of the D. P. & L. variety grown by the prosecutor. The defendant in his statement to the jury made no reference to any cotton in the back of his car; and while it is true that his statement could have been construed as a general denial of guilt, and he might have considered this denial sufficient without denying or explaining the·presence of this or any other cotton in his car, if any, the jury might also have taken into consideration in arriving at its verdict this failure by the defendant to explain or expressly deny that any cotton was in his car. From these circumstances, we think that the jury was authorized to find the defendant guilty of the theft of the cotton.

■ The court charged the jury on the subject of flight. The correctness of the charge as a rule of evidence is not challenged, but its applicability in the case is denied. The defendant contended that no evidence adduced upon the trial authorized the charge on this subject. The sheriff testified: that he found that one of the tires on the car in the defendant's yard had made the peculiarly characteristic track found at the scene of the theft; that the defendant was at his home during the investigators' examination of the tires on the defendant's car; that, since he had no warrant for the defendant's arrest, he returned to town to obtain the warrant, but upon his return the defendant could not be found at his home and, though he sought to locate him on many occasions, he never did; and that the defendant was never found until some thirty days later, when he surrendered in company with his attorney. This was sufficient evidence of flight to authorize the charge on that subject. The weight to be given this circumstance was for the determination of the jury. There is no merit in ground 3.

■ Ground 2 complains of the following charge to the jury: "I charge you, gentlemen, that where one is found in possession of property recently stolen and that possession is not explained to the satisfaction of the jury, this circumstance is to be considered by the jury and may authorize a conviction." This charge is objected to on the ground that it is not warranted by the evidence in the case. "It not infrequently happens that the testimony proves more than any one witness knows, or than is known to all the witnesses taken together. This is so perhaps in every instance where the evidence, though sufficient, is only circumstantial. Where the evidence is all direct, the jury can be no wiser than the witnesses, but they have to be wiser in order to find the truth of any fact upon circumstantial evidence alone. Nor to justify a charge is it requisite that the evidence, whether direct or circumstantial, should be free from obscurity. To warrant the court in charging the jury on a given topic, such as whether certain land was included in a purchase by certain persons of other land, it is not necessary that the evidence should shine upon it with a clear light. It is enough if glimpses of it be afforded by the evidence. Truth is often dim, but is truth nevertheless. Frequently amongst the facts best proved is one which no witness has mentioned in his testimony, such fact being an inference from other facts." *Brown* v. *Matthews*, 79 *Ga.* 1, 8 (4 S. E. 13). From a reading of the evidence which has been set out in division one of this opinion, it will be seen that this ground is not meritorious.

■ Ground 1 excepts to the introduction of the following evidence: "Yes, I examined some cotton over at Granville Smith's; it was on a wagon right back of his house. It was D. P. & L. cotton. I examined it to see whether there were any stains on it. Yes, there were stains, it was red dirt. As to what kind of land that is over there where Granville Smith and L. C. Rogers live; well, that is the first time I was ever over there, and it was after night, and it looked to me kind of a slatey land." The defendant objected to the introduction of this evidence with regard to the cotton found on the wagon back of Granville Smith's house, on the ground that this evidence in no way connected the defendant with the theft of the prosecutor's cotton. The court allowed this evidence on the ground that the defend-

ant and Granville Smith had been riding around together in the defendant's car, in the vicinity in which the cotton was stolen, the afternoon before the theft; and the jury was authorized to find that this car was the one in which the cotton was transported, and that the car belonged to the defendant. This evidence was admitted as a link in the chain of circumstances which the State contended connected the defendant with the theft of the cotton and showed his guilt. "Each fact is proved separately, and the case can not be made out all at once. If enough is not shown, the defendant can not be convicted; but no relevant fact can be excluded because by itself it does not prove the whole case. See People *v.* Saunders, 29 Mich. 272; Harwood *v.* People, 26 N. Y. 192. The restrictive rules of evidence are intended to prevent verdicts from being based on surmise; not to exclude facts which, with others, tend to establish the charge." *Rivers* v. *State,* 118 *Ga.* 42, 44 (44 S. E. 859). In *Carter* v. *Marble Products Inc.,* 179 *Ga.* 122, 127 (175 S. E. 480), the Supreme Court held: "Evidence which tends to establish the issue in controversy. is admissible, even if it is not of itself sufficient for that purpose. *Nugent* v. *Watkins,* 129 *Ga.* 382 (2) (58 S. E. 888); *Tifton &c. Railway Co.* v. *Butler,* 4 *Ga. App.* 191 (4) (50 S. E. 1087); Civil Code (1910), § 5744. Evidence is presumed to be admissible unless some objection is made which shows the contrary; and where the admissibility of evidence is doubtful, the rule in this State is to admit it for the consideration of the jury under proper instructions from the court. *Jasper County* v. *Butts County,* 147 *Ga.* 672 (95 S. E. 254). Where evidence is objected to, the burden is upon the objecting party to show wherein the evidence is inadmissible. *Murphey* v. *Bush,* 122 *Ga.* 715, 719 (50 S. E. 1004)." We think that the court committed no reversible error in admitting the evidence in question as a link in the chain of circumstances of the entire transaction.

■ The cases cited in the brief of the defendant are distinguished by their facts from the instant case. Particularly is this true under the circumstances here. As discussed in the other divisions of the opinion, the defendant Rogers was present at his home when the investigators came to the house and examined the tires on the defendant's car, one of which bore the tell-

tale mark. The defendant was never informed why the investigators were examining the car, nor was he accused of any crime. The sheriff left the defendant's house for the purpose of obtaining a warrant for his arrest, but the defendant was not so informed. However, upon the return of the sheriff, the defendant was not to be found at his home nor could he be located until some thirty days later. "The wicked flee when no man pursueth." Prov. 28:1. It might also be observed that the defendant in his statement to the jury made no explanation of his flight. *Sewell* v. *State,* 76 *Ga.* 836.

For the foregoing reasons, the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Gardner and Townsend, JJ., concur.*