State ex rel Clark v. Gates.

and cause remanded, in which the other judges concur.

REVERSED.

---

STATE *ex rel.* CLARK V. GATES.

1. **Public Officers**: JUDICIAL NOTICE will be taken of the powers and authority of public officers when they are prescribed by law. They need not be pleaded.
2. **Implied Powers of Public Officers.** Where an agent is clothed with general powers, the means and measures necessary to carry them into effect are also granted; and this principle is applicable to public as well as private agents.
3. **The State Treasurer** may pay a demand upon the treasury by a check upon a bank where he has money on deposit, that mode of payment being in accordance with immemorial commercial usage.
4. **Bank Check for Public Funds**: PRESENTMENT FOR PAYMENT. When a county treasurer receives from the State treasurer a bank check for money due from the State to the county, it is his duty to make presentment for payment within a reasonable time, and if he neglects to do this, and before the check is paid the bank fails, the loss will fall upon himself.
5. **State Treasurer**: SECURITY FOR STATE DEPOSITS IN BANK: COUNTY TREASURER: FAILURE TO PRESENT CHECK. The fact that a State treasurer has failed to comply with that provision of the constitution of 1875 which requires him to take security for State funds deposited in bank, will not relieve a county treasurer who has received a bank check from him in payment of money due from the State to the county, from personal liability incurred by failure to present the check in time.

Mandamus by Clark, the treasurer of Osage county, to compel Gates, the State Treasurer, to pay to Osage county her proportion of the State school funds for the year 1877.

*Lay & Belch* with *R. S. Ryors* for relator.

1. Section 145, p. 1187, 2 Wag. Stat., was rendered

nugatory by the adoption of Sec. 15 of Art. 10 of the constitution of 1875. Lambeth was not bound to use the diligence required in ordinary cases, because the failure of the bank could not work a loss of the special deposits of the State funds. He could not presume that the bank would in violation of law use the funds in its ordinary business, and if a bond was taken, as provided, by the constitution, no loss has been sustained. *Ray Co. v. Bently,* 49 Mo. 236.

2. The State Treasurer had no right to draw his check in discharge of his obligation to pay the warrant drawn on the school money apportioned to Osage county. It is not averred that Lambeth received the check in payment of that money; and, even if it was so averred, Lambeth had no authority to make such agreement, or to receive the check in payment. No loss is averred. The following authorities fully bear out our position, that officers or agents of a political or public corporation are confined strictly to the power prescribed by the law, and all persons dealing with them must know the extent of their authority. *Miller v. Iron Co.,* 29 Mo. 122; *State v. St. Louis Co.,* 34 Mo. 546; *Cheeney v. Brookfield,* 60 Mo. 53; *Kiley v. Oppenheimer,* 55 Mo. 374; *Ceart v. Cogill,* 6 Mo. 316; *Stillwell v. Craig,* 58 Mo. 30; 15 Mo. 604; *Maguire v. State Sav. Ass.,* 62 Mo. 349; Story on Agency, Sec. 11; Dillon on Mun. Corp., Sec. 372; *Baltimore v. Eschbach,* 18 Md. 276; *Thurston v. Magnolia,* 1 Bond (Dis. of Ohio).

The Government is not bound by the declaration of an agent, unless it manifestly appear that he acted within the scope of his authority. *Whiteside v. United States,* 93 U. S. 247; *Mayor v. Eschbach,* 17 Md. 282: Story on Agency, 307; *Lee v. Munroe,* 7 Cranch 376; *State v. Hayes,* 52 Mo. 578; *Gibbons v. U. S.,* 8 Wall. 274; *U. S. v. Rhame,* Int. Rev. Rec. 235. When an attorney has authority to receive payment, he cannot receive anything but money. *Willey v. Greenfield,* 30 Me. 452; *Holt v. Storris,* 7 Wis. 253; *Higgins v. Moore,* 34 N. Y 417; *McCulloch v. McKee,*

16 Penn. St. 289; *Marion Co. v. Moffitt*, 15 Mo. 604; *Riley v. Second Bank*, 53 Barb 228; *Downey v. Hicks*, 14 How. 240; *Ward v. Smith*, 7 Wall. 447.

*Ewing & Pope* for respondent.

This is a controversy between two public officers, both bonded, and the question is, which shall lose the money, he who did his whole duty, or he who acted negligently. The one paid the money exactly as directed by the other. The treasurer has authority of law for keeping money in a St. Louis bank on deposit to his credit.   Acts of 1877, p. 383, § 17; 2 Wag. Stat., p. 1187, § 145.

SHERWOOD, C. J.—In the manner provided by law the county court of Osage county, in March, 1877, entered an order directing the State Auditor to draw his warrant on the State Treasurer for the sum of $3,198.50, this being the amount ascertained to be due that county as its proportion of the public school fund for that year.   The warrant was accordingly drawn, payable to Lambeth, then county treasurer, and presented to the State Treasurer, who, in compliance with the request and direction of Lambeth, " to send by check " on a bank in St. Louis, payable to his order, took up and paid the warrant by sending to Lambeth, in accordance with his request, a check for the amount due; which check was made payable to the order of Lambeth, at the National Bank of the State of Missouri, a bank in the city of St. Louis, at which the State Treasurer had ample funds to meet the check.   Lambeth received the check in due course of mail, but negligently and carelessly retained it in his possession, never presenting it for payment, either before or after that bank suspended payment, which suspension occurred June 19, 1877, forty days after the reception by Lambeth of the draft, although an amount amply sufficient to meet the check was on deposit to meet the same, and still remains deposited in the bank; nor did Lambeth's successor in office ever present

the check for payment. At the time the State Treasurer drew the check he had, in conformity to law, designated the National Bank aforesaid, as the one where the revenues of the city of St. Louis due to the State should be deposited; and in pursuance of such designation the collector of said city, had deposited a large amount of the revenues due the State, at the bank where the check was drawn. There was also, when the check was drawn, deposited in such bank, by Mercer, the late State Treasurer, over $200,000, which was received by the present State Treasurer as money on deposit due the State. In consequence of the failure to present the check, the amount thereof has been lost to the State. The foregoing allegations are, by the demurrer which questions the sufficiency of the State Treasurer's return, confessed to be true, and we do not see that the stipulation filed herein by the parties, at all affects the status of this case, or materially alters the salient features presented by the return. It is urged, in objection to the return, that it does not show that the amount due has been paid, or that the State Treasurer was authorized to draw, or the county treasurer authorized to receive, the check given in payment. The fact of payment is sufficiently averred, so that the only question for consideration is one of bare authority in giving and in the reception of the check.

Relative to public officers, whose authority and powers are prescribed by public law, we take judicial cognizance, and no necessity exists to set forth such authority. Thus a sheriff may aver that he levied a writ of execution, or made a sale thereunder, without averring that the law gave him authority to make either the levy or the sale, and if a question arises as to the manner of performing either of the above named or other official acts, and such method of performance is pleaded, it then becomes the duty of the court to determine whether the pleadings show that the law has met with compliance in the given instance.

1. PUBLIC OFFICERS: judicial notice.

This duty devolves on us in the case at bar.    If there is one principle in the law which finds abundant and oft repeated recognition, it is this: that where an agent is clothed with general powers, the means and measures necessary to effectuate the powers granted, attend the grant of authority as inevitable incidents, (*Edwards et al. v. Thomas et al.*, 66 Mo. 468).    Thus, an agent employed to get a bill discounted may, unless expressly restricted, endorse it in the name of his employer; a broker employed to effect a policy of insurance may adjust the loss and do all that is requisite towards such adjustment; an agent employed to issue process may receive the debt and costs, and, in general, an agent has implied authority to use those means of which the principal could not but have foreseen the necessity, and therefore could not but have intended to authorize. (Smith Merc. Law, 175, 176, and cases cited); and the same principle which applies to private agents is equally applicable in this regard to public ones.    In the Floyd acceptances (7 Wall. 666), so confidently relied on by relator, the point in judgment was, that the Secretary of War, Floyd, had, as such secretary, no authority whatever to bind the Government of the United States, by accepting bills of exchange drawn on and accepted by him as Secretary of War; and therefore, that even purchasers before maturity of such acceptances, had no right of recovery against the Government. But while holding this view, Mr. Justice Miller expressly says:   "The authority to issue bills of exchange not being one expressly given by statute, can only arise as an incident to the exercise of some other power.    When it becomes the duty of an officer to pay at a distant point, he may do so by a bill of exchange, because that is the usual and appropriate mode of doing it.    So when an officer or agent of the Government at a distance is entitled to money here, the persons holding the fund may pay his draft, and whenever the drawing of a bill of exchange is the appropriate means of doing that which the department or officer

*2. IMPLIED POWERS OF PUBLIC OFFICERS.*

having the matter in charge, has a right to do, then he can draw and bind the Government in doing so."

Here the right and duty of Treasurer Gates to make the payment, are conceded by the very form of this proced-3. THE STATE ure; the only point of contest being the TREASURER. mode he saw fit, at the request of Lambeth, to employ. If the authority furnished us by relator is to be our guide, the right to do the act carries with it in its train the usual mode of accomplishing the object sought. Can it be seriously contended that payment by check, where one has money deposited, is not in strict accordance with immemorial commercial usage? Manifestly not. This being the case, no room, it would seem, can be left to doubt the lawfulness of the method of payment adopted by respondent. To deny this, to assert the contrary doctrine, would be equivalent to saying that no payment by the State Treasurer short of the actual delivery of the money to the party entitled thereto, would be valid in law. We cannot tolerate such an idea. To hold in this way would be to seriously retard, if not to absolutely cripple the business facilities both of State and county officials. If lawful for the State Treasurer to pay by check, then also lawful for the County Treasurer to receive payment by the same medium.

The payment being lawful, and the parties occupying the same plane as private individuals engaged in a similar transaction, as we think has been successfully established, the only remaining point is, on whom is the loss, which the pleadings admit has occurred by reason of non-presentation of the check for payment, to fall? The rule is well settled that if any individual holder of a check does not present it for payment within a reasonable time, and any loss occur in consequence of his laches, he alone must bear it. No sound reason can be urged why the same rule should not apply to instances like the present. The check in question, was never presented, and not the slightest semblance of an excuse is

offered for the strange neglect. On whom, then, is the loss consequent upon such neglect to fall? On this point our own reports furnish authority in support of the foregoing views. In *Chouteau v. Rowse*, 56 Mo. 65, a tax-payer had funds in bank sufficient to pay his taxes, and being called upon by the collector, gave his check for the amount. The collector failed to present the check; meanwhile the bank failed, the collector returned the taxes delinquent and the tax-payer was compelled to pay the taxes again, and it was held that he could recover from the collector the amount of the check. That case must be held decisive of this. No express or statutory authority can be found which gives permission to a collector to receive payment by check, or to the State Treasurer to make payment in that way; and the case just mentioned can only be upheld on the ground already announced, that if the power to perform an act be granted, the grant bears with it, as a logical sequence, the usual means, measures and modes of carrying the power into execution. In the case above cited, we held that as the collector failed to present the check, he made the debt his own, and as we fail to discover any sound reason for distinguishing this case from that, we make the same ruling in regard to the county treasurer, holding, as we do, that to rule otherwise, to permit the county treasurer to retain in his possession a check on a solvent bank until insolvency and consequent loss occurs, and then to cast that loss on the shoulders of the respondent, who has been without fault, would be to give sanction to a practical fraud, and legal validity to nothing short of the grossest injustice.

We have been able to discover no insuperable antagonism between the constitutional and statutory provisions referred to, nor, if there were, what bearing it would have in the present instance. There is nothing in the return showing any failure to perform official duty on the part of respondent in respect to the provisions of the constitution,

5. STATE TREASURER: security for state deposits in banks: county treasurer: failure to present check.

whereon relator relies, and we certainly will not gratuitously presume any such dereliction of duty. Conceding then, that respondent has complied with the constitutional requirements, we do not see that such concession betters the plight of relator; because, in that event, he would not be entitled to the extraordinary remedy he now seeks until respondent had recovered on the security given by the bank of deposit. If, on the other hand, the constitutional provision has not met with compliance, still the admitted fact remains that through the palpable neglect of the county treasurer, the loss occurred. It does not, therefore, concern relator, so far at least as relates to the present proceeding, whether respondent did what is alleged to be his duty under the constitution or not. If it was his duty and he performed it, that performance puts an interdict on the present proceedings being successful. If, on the contrary, he did not perform his alleged constitutional duty, the all-sufficient answer is that no loss occurred by reason of non-performance, but only by reason of the non-presentation of the check whereby the county treasurer made both the debt and the loss his own. Viewing the matter in this light, we deny the peremptory writ. All concur.

PEREMTORY WRIT DENIED.