# CASES

## DECIDED IN THE

# SUPREME COURT OF GEORGIA

### AT THE

## MARCH TERM, 1922.

---

WILEY *et al.*, commissioners, *v.* CITY OF SPARTA; *et vice versa.*

1. The bond commissioners of the City of Sparta are public officers, charged
with the safekeeping and investment of the sinking-fund of said city,
and with the custody and safekeeping of the bonds in which said fund
was invested.

(*a*) It was the duty of said commissioners, under the direction of the mayor
and council or a duly authorized committee of them, to invest said fund,
within six months from the collection of the same, in valid outstanding
bonds of said city, or in bonds of some other municipality of this State,
of equal or larger size, which had been duly validated, or in county
bonds of this State so validated, or in valid outstanding bonds of this
State or of the United States; and to have said bonds forthwith reg-
istered in the name of said city, provided said bonds by their terms were
capable of being registered.

(*b*) When said commissioners deposited in a bank the bonds in which
they had invested a portion of said fund, and the remainder of said
fund consisting of money, said money being placed in said bank on
general deposit in the name of the bond commission, they are liable
for the loss of said bonds and money, caused by the misappropriation
thereof by said bank or its officers and employees, and the subsequent in-
solvency of said bank, although said commissioners exercised due dili-
gence in selecting the bank in which the same were deposited.

(*c*) Such general deposit in said bank of said sinking-fund by said commis-
sioners created the relation of debtor and creditor between the bank and
the commissioners, and amounted to a loan of said fund by the com-
missioners to said bank, without security, in violation of their duty as
such bond commission.

2. The plaintiffs are not relieved from liability for the loss of such bonds and such portion of the sinking-fund not invested by them, because, with the knowledge of the city officials, they deposited the same in the bank in which the city deposited its funds, there being no formal action of the mayor and aldermen of the city authorizing the bond commissioners to make such deposits in said bank; the said commissioners under the law being charged with the safekeeping of the sinking-fund, and not the city officials.

3. Where the members of a bond commission are entrusted with the sinking-fund of a city for investment in municipal bonds, and they invest a portion thereof in such bonds, which they deposit in a bank for safekeeping, and which are lost by being misappropriated by the bank or its officials and employees, the liability of the former for such bonds is the same as their liability for the safekeeping of such sinking-fund when in the form of money; the real ground of liability being that under the law the safekeeping of such investments is entrusted to such commissioners, and not to another whom they may select.

4. A decree is the judgment of the judge in an equitable proceeding, upon the facts ascertained.

(a) The judge can correct an error of law appearing upon the face of an auditor's report, when it can be done independently of the evidence, or when it can be done upon the facts found by the auditor which have been approved by the court.

(b) When an auditor upon facts found by him reaches a wrong legal conclusion as to the decree to be entered in an equitable proceeding, the judge can correct such erroneous conclusion of law, and render the correct decree under the finding of the facts by the auditor.

Nos. 2905, 2913. August 17, 1922. Rehearing denied September 20, 1922.

Equitable petition. Before Judge Park. Hancock superior court. September 30, 1921.

R. C. Wiley and R. L. Merritt, suing as bond commissioners of the City of Sparta, filed their equitable petition against the First National Bank of Sparta, the Third National Bank of Atlanta, the City of Sparta, and Robert Holmes; and alleged as follows: Plaintiffs and John D. Walker were elected by the mayor and aldermen of the City of Sparta, under section 19 of its charter, a bond commission to serve without compensation, to whom the treasurer of said city was to turn over the sinking-fund on hand, and an additional sum of $500 each January 1, as a sinking-fund to meet the bonded indebtedness of said city. At first these commissioners were to loan these funds, reporting investments to the mayor and aldermen, to collect the interest, and, after supplying any deficiency in this sinking-fund, to return the remaining interest into the city treasury. By a later act they were required to invest in municipal bonds. Said bond commission was made perpetual, vacancies to be

filled by the mayor and aldermen. These commissioners were appointed on or about May 1, 1916, and have since continued such. On or about September 27, 1917, John D. Walker absconded, and his whereabouts are unknown. On or about September 30, 1911, said commissioners invested the sinking-fund then available in their hands in municipal bonds as follows: $4,000 City of Jackson, Ga., 5 % bonds due December 1, 1935; $2,000 Town of Thomson, Ga., 5 % bonds due December 1, 1938; and $1,000 City of Douglas, Ga., 5% bonds due December 1, 1936; for which they paid $7,396.19. On October 5, 1911, said bonds were deposited as a special deposit for safekeeping with the First National Bank of Sparta, receipt being taken therefor from said bank. Thereafter two other bonds were purchased, and on June 15, 1912, four of the bonds as purchased were exchanged for bonds of like amount of the City of Sparta, which were placed with said First National Bank of Sparta for safekeeping with the other bonds belonging to said sinking-fund. Said bank, at said times and since, was the custodian of the funds not invested by said commission, which kept said funds on general deposit in said bank. Said bank collected the coupons from said bonds, depositing the proceeds to the credit of said commission. Said bank had authority to collect said coupons, " borrowing the proceeds on general deposit as aforesaid, on which it paid no interest." Plaintiffs have kept no account of what was deposited or drawn out for their account as bond commissioners since they became such, and have relied wholly on said bank to keep the account. They do not know how the account stands. They requested of said bank a statement of said account, and a full showing, but have never been furnished with the same. On February 24, 1919, they demanded of said bank the possession of said bonds, but said demand has not been complied with.

Plaintiffs have been informed that said bonds are or have been in the hands of the Third National Bank of Atlanta, which is the correspondent of said First National Bank. They do not know by what right or authority said Third National Bank holds the same. They expressly deny that they have at any time ever authorized their removal from the First National Bank of Sparta. They are informed that said Third National Bank claims to have acquired them as security for some alleged indebtedness of said John D. Walker, or said First National Bank of Sparta, for which said

bonds could not have been lawfully or validly pledged. They are informed that recently Robert Holmes, by taking up said debt alleged to be secured by said bonds, acquired possession thereof, or some pretended interest therein; and that said First National Bank and Robert Holmes collected the interest coupons on said bonds while in their possession. Petitioners have demanded of said Third National Bank and Robert Holmes full information and the surrender of said bonds, which has not been complied with. Petitioners are entitled to the custody of said bonds, and to collect the income therefrom for the purpose of administering the same as by law provided. Though without legal title perhaps, they have the right of possession, and have certain powers to be exercised in trust as aforesaid, and are in the case of trustees acting without compensation. Said funds are trust funds which may be traced into whosesoever hands they pass. Petitioners are entitled to an account of said sinking-fund, whether in cash deposit on general deposit, or in bonds deposited on special deposit, and for collection of interest coupons, from said First National Bank, and to an accounting from said Third National Bank and Robert Holmes of their dealings with said funds and bonds. They pray that the First National Bank of Sparta make a full and complete account of the cash belonging to said sinking-fund in its hands, including the collection of interest on said bonds, and of the bonds belonging to said sinking-fund with the interest coupons; and that the Third National Bank and Robert Holmes likewise account as to their dealings with said bonds and the interest therefrom.

The receipt of the First National Bank of Sparta was dated October 15, 1911, was given in favor of R. C. Wiley, R. L. Merritt, and John D. Walker, composing the Sparta bond commission, and was for $4,000 City of Jackson, Ga., 5 % bonds due December 1, 1935, $2,000 Town of Thomson, Ga., 5 % bonds due December 1, 1938, and $1,000 City of Douglas, Ga., 5 % bonds due November 1, 1936, and recited that said bonds had been deposited in the vault of said bank for safekeeping and subject to the orders of the Sparta bond commission. The receipt was signed, " First National Bank of Sparta, by H. L. Middlebrooks, Cashier."

In its answer the City of Sparta admitted that the bond commissioners invested $7,396.19 of said sinking-fund in municipal bonds as stated in the petition, and that the bond commissioners

purchased two other bonds and exchanged for its bonds four bonds of the City of Jackson. It denied that the First National Bank of Sparta was the custodian of said sinking-fund in any legal sense, and denied that said bank had authority to collect the interest coupons on said bonds and borrow the proceeds on general deposit. It alleged that it had delivered into the custody of said commission on account of said sinking-fund, at different dates from May 7, 1906, to May 3, 1912, the total sum of $9,733.33 It had no information as to what disposition had been made of said sum or the income from the investment thereof, except as to the investment of part thereof in bonds to the amount of $9,000 par value. It submitted that it was entitled to a full and complete accounting with the plaintiffs and with the other defendants, for which it prayed, and that plaintiffs be required by decree of the court to make good and re-establish its sinking-fund which should be in their hands as bond commission.

It is unnecessary to set out the allegations of the answers of the other defendants. The issues of law and fact were submitted to an auditor. The findings of the auditor, which are material to an understanding of the errors alleged in this cause, are as follows:

Findings of facts: (1) " I find that the $7,000 5 per cent. City of Sparta bonds and $2,000 5 per cent. Town of Thomson bonds were deposited in the First National Bank of Sparta by the bond commission by and with the knowledge and consent of the president and cashier of said bank as well as other officers of said bank, and receipt was given therefor by the cashier; and that all due diligence was used by the plaintiffs in keeping said bonds in a safe place." (2) " I find sufficient evidence to establish the fact that the First National Bank of Sparta was the acknowledged and authorized depository of the City of Sparta, notwithstanding there was no formal action taken by the mayor and city council." (3) " I find that the plaintiffs were not duly notified by the treasurer of the City of Sparta of the deposits made in the First National Bank of Sparta and placed to the credit of plaintiffs, and that plaintiffs made proper inquiry of the officers, agents, and employees of said bank and of the treasurer of the City of Sparta as to whether or not any funds were in the bank or on hand for the plaintiffs' use as bond commissioners, and that plaintiffs were informed by the officers, agents, and employees of said bank and by

the treasurer of said city that there was no money to the credit of the bond commission in the bank or with the treasurer of the city for the bond commissioners' use." (4) "I find that the plaintiffs had nothing to do with the removal of or the conversion of the bonds." (5) "I find that the plaintiffs were not instrumental in the drawing out from the First National Bank of Sparta the $4,000, and that said sum was checked out without their knowledge, authority, or consent."

Finding of law: "Based upon the five above findings of facts, I find that under the law the plaintiffs in this suit are not liable in any sum whatever."

The City of Sparta filed the following exceptions of law to the auditor's report:

"1. The auditor erred in his finding of law stated in Division 1 of his 'Findings of Law' under the caption 'First National Bank of Sparta,' and in Division 1 of his 'Findings of Law' under the caption 'Robert Holmes,' and in his 'Findings of Law' under the caption 'The Third National Bank of Atlanta,' and in Division 1 of his 'Final Finding,' to the effect that the liability of the First National Bank of Sparta, Robert Holmes, and The Third National Bank of Atlanta, as for conversion of the bonds in question, should bear interest at the rate of five per cent. per annum from the date of the conversions; whereas said rate of interest should be seven per cent. per annum.

"2. Said defendant excepts to the statement in Division 1 of 'Findings of Facts' under the Caption 'R. C. Wiley and R. L. Merritt,' to the effect that 'all due diligence was used by the plaintiffs in keeping said bonds in the safe place,' upon the ground that the same is no finding of fact at all; 'due diligence' being a relative term, and there being no other facts found indicating what degree of diligence was so used.

"3. Said defendant excepts to Division 2 of the 'Findings of Facts' under the caption last aforesaid, upon the grounds (*a*) that the same is a legally impossible fact; (*b*) that there is no such thing known to the law as an acknowledged and authorized depository of the City of Sparta; (*c*) because said finding is immaterial; and (*d*) because the fact of said city having a depository could have nothing to do with plaintiffs' responsibility.

"4. Said defendant excepts to Division 3 of the 'Findings of

Facts' under the caption last aforesaid, on the grounds (*a*) that the same is immaterial, and (*b*) that plaintiffs were bound to have knowledge of the funds and assets committed to their charge.

" 5.    Said defendant excepts to the following statement in said report under the head, ' Reasons for above Findings of Facts and Law,' under the caption ' R. C. Wiley and R. L. Merritt,' to wit: ' There is no doubt in my mind that when this information reached the mayor and council of the City of Sparta that the bonds were in the keeping of the First National Bank of Sparta, it was the duty of the mayor and council, if they disapproved of this place of deposit, to have notified the bond commission.    Their silence amounted to their approval and ratification.    The bonds, so far as the evidence discloses, remained in this bank until March 27, 1915, and not one word of complaint was made by the mayor and council,' on the grounds (*a*) that it is immaterial; and (*b*) that said mayor and council had no authority to affect the responsibility of plaintiffs by failing to object to the place of deposit of the bonds.

" 6.    Said defendant excepts to the following statement in said report under the head and caption last aforesaid, to wit: ' Rives, I presume, was mayor until May, 1914, and Robert Holmes was then elected, and he was also vice-president of the First National Bank of Sparta (see Holmes' evidence, page 43) ; Holmes continued as mayor until May, 1918, and no complaint was made about the bonds being deposited in this bank,' upon the grounds (*a*) that the same is immaterial; and (*b*) that the responsibility of plaintiffs could not be affected by the failure of the mayor of said city to complain about the place of deposit of the bonds.

" 7.    Said defendant excepts to the following statement in said report under the head and caption last aforesaid, to wit: ' Again, the evidence convinces me, as I have before stated, that Holmes knew of the removal of these bonds in March, 1915; and here we have a mayor of the City of Sparta, the fountainhead of the city, taking the property of which he is the governor, and this city would ask that two of its servants, acting without compensation and without bond, should pay personally for the act of its chief.    I do not believe it is right for two subordinate officers to pay for the acts of their superior, when the subordinates were in no way parties to the superior's wrong-doing,' on the grounds (*a*) that it is immaterial; and (*b*) that it treats the mayor of said city, instead of the

bond commissioners of said city, as having control of the money
and property of the sinking-fund of said city.

" 8.   Said defendant excepts to the following statement in said
report under the head and caption last aforesaid, to wit: ' The
negligence here is upon the mayor and council, because, as I be-
lieve, the evidence shows that Holmes, the mayor, knew the bonds
were gone, and he wanted to postpone an investigation which might
disclose the disappearance of the bonds,' upon the grounds (*a*) that
the same is immaterial; and (*b*) that it ascribes to the mayor and
council of said city, instead of the bond commission of said city,
ultimate responsibility for the sinking-fund of said city.

" 9.   Said defendant excepts to the following statement in said
report under the head and caption last aforesaid, to wit: ' Merritt
swears, and it is nowhere denied (see Merritt's evidence pages 4,
5, 6), that he made inquiries repeatedly of the First National Bank
of Sparta, of Robert Holmes, mayor, and of Beeman, secretary and
treasurer of the City of Sparta, if there was any money on hand
with which to buy bonds, or if any money had been deposited with
the First National Bank of Sparta, and he was told there was not,'
upon the grounds (*a*) that it is immaterial; (*b*) that plaintiffs
were bound, as matter of law, to have knowledge of the sinking-fund
for which they were commissioners; and (*c*) that they were bound,
as matter of law, to know whether or not they had loans outstanding,
and the interest thereon maturing, and the principal and interest
thereof being collected, and whether the five per cent. interest on
the $9,000.00 bonds they held was being collected as it matured.

" 10.   Said defendant excepts to the auditor's findings of law
under the caption last aforesaid, and says that the auditor should
have found and reported that plaintiffs as bond commissioners of
the City of Sparta are chargeable in favor of said City of Sparta,
on account of the sinking-fund which should be in their hands, in
the following sums, to wit: $9000.00 on account of bonds lost, with
interest thereon at the rate of seven per cent. per annum from
March 27, 1915, and the further sum of $4318.23 on account of
moneys lost, with interest at the rate of seven per cent. per annum
on $766.45 from January 1st, 1913, on $2651.78 from January 1st,
1914, on $450.00 from July 1st, 1914, on $450.00 from July 1st,
1915; and that the judgments to be rendered against the First
National Bank of Sparta, Robert Holmes, and the Third National

Bank of Atlanta, in favor of plaintiffs for the use of said city, should be held and deemed to be as collateral for the judgment as against said plaintiffs."

The trial court approved the findings of facts by the auditor. He overruled the first exception by the city to the auditor's findings of law; and sustained all the other exceptions of law filed by the city. Thereupon the judge entered a decree containing, among other provisions, the following: "That said plaintiffs R. C. Wiley and R. L. Merritt are chargeable, responsible, accountable, and liable for the sinking-fund of the City of Sparta, which should be in their hands as bond commissioners of the City of Sparta, in the sum of seventeen thousand, two hundred and thirty-five and 87/100 dollars (being the aggregate of the amounts for which this decree is rendered in their favor), and that they are chargeable, responsible, and liable for interest on the sum of nine thousand dollars at the rate of five per cent. per annum and on the sum of four thousand eighteen and 23/100 dollars at the rate of seven per cent. per annum from this date until said sum of seventeen thousand two hundred and thirty-five and 87/100 dollars and said interest shall have been invested by them as bond commissioners as aforesaid, as required by law." To this portion of the decree the plaintiffs excepted on the grounds: that (a) there are no pleadings upon which it could be based; (b) under the findings of fact by the auditor such portion of said decree is legally impossible; (c) there are no findings of law sufficient to base the same upon; (d) there being no verdict of a jury (the whole cause being finally disposed of by the court on the report of the auditor, and the court's rulings on the exceptions filed to said report), the findings of the auditor do not support this portion of the decree; (e) such findings of the auditor as were approved by the court, together with the ruling of the court in sustaining certain exceptions of law filed by the City of Sparta to the auditor's report, do not constitute any legal basis for the above portion of the decree; (f) under the undisputed facts in the record, all sums which reached the hands of the plaintiffs were invested in the bonds sued for, and so much of the decree as refers to $4018.23 deals with money in which they were in no event prima facie chargeable, said sum being made up of moneys paid to the First National Bank of Sparta directly by the City of Sparta, and of interest on the coupons attached to said bonds, which under

the law went directly to said city, and was no part of the sinking-fund; (*g*) the $9,000 item represents the par value of the bonds, and the auditor's finding of fact was to the effect that plaintiffs were guilty of no negligence and had nothing to do with their conversion, for which reason it was erroneous to decree that they were personally chargeable therefor; (*h*) the auditor having found as a fact, and this finding being undisputed, that the First National Bank of Sparta was the authorized and acknowledged depository of the City of Sparta, it was erroneous to hold the plaintiffs liable for the conversion of said bonds; and (*i*) they can not in any event be held personally liable, because they are parties to this suit in their representative capacity as bond commissioners of the City of Sparta; and while there is a prayer for accounting from the First National Bank of Sparta, there are no proper parties and pleadings to justify a decree against them personally.

After the auditor had made his report, and during the argument on exceptions thereto by the City of Sparta, the trial judge permitted the First National Bank of Sparta to amend its answer, in which it alleged that whatever bonds had been delivered by the plaintiffs to any officer of said bank were delivered as a special gratuitous bailment, as to which the bank, if liable at all, was liable only for gross neglect, and such gross neglect must have contributed to the loss of such bailed property, and that the bank was not guilty of gross or other neglect in connection therewith. It was further alleged that the bank was in no wise benefited by the loss of such deposit, and was not liable to the plaintiffs or any one else for the loss thereof. The plaintiffs objected to the allowance of said amendment, on the ground that it came too late; which objection was overruled by the court, and said amendment was duly allowed. The plaintiffs assign error on this ruling.

The City of Sparta moved to recommit to the auditor his report, because (1) it included no rulings upon objections made by this defendant to the testimony offered by opposing parties; and (2) because said report contained no finding of fact as a basis for an accounting and decree as between plaintiffs and this defendant as to the sinking-fund other than that invested in the $9000 of bonds, whereas there was evidence requiring such a finding; the report made by the bond commissioners on September 14, 1911, showing outstanding loan to C. S. Carey for $1000, and to T. W. Baxter

for $2000, both bearing interest, a net balance on hand of $6422.23, that on September 16, 1911, there was placed to said account $1030, making a total of $7452.22, that after paying $7396.19 for the purchase of said bonds from October 1, 1911, there was a balance of $56.04, that various deposits to said account were made from December 1, 1911, to March 30, 1915, which, after deducting $2032.92 paid to the bond commission for $2000 of bonds, make up a balance of $4018.23, for which the First National Bank is held liable, and the evidence shows that no money was received by the bond commission from said city after the $2233.33 paid over May 3, 1912, and that there was no accounting for the $3000 of loans outstanding September 14, 1911, with interest on $9000 of bonds at 5 per cent. per annum. This paragraph of the motion to recommit set out certain testimony given by the plaintiffs.

The City of Sparta abandoned the first ground of this motion to recommit, and the court overruled the second ground thereof. To the latter ruling the City of Sparta excepted, on the ground that the court should have sustained said motion and recommitted said case to the auditor to report findings of fact as a basis for an accounting and decree as between plaintiffs and the City of Sparta; the evidence reported by the auditor, and especially that set forth in the second ground of said motion, requiring the finding of such facts as would demand a decree holding plaintiffs chargeable, responsible, accountable and liable for the sinking-fund of said city of Sparta. The City of Sparta filed its cross-bill of exceptions to this ruling of the court.

*R. L. Merritt, Wiley & Lewis,* and *Hall, Grice & Bloch,* for plaintiffs.

*A. R. Wright, John R. L. Smith, Grady C. Harris, Jones, Park & Johnston,* and *Alston, Alston, Foster & Moïse,* for defendants.

HINES, J. (After stating the foregoing facts.)

1. The City of Sparta filed certain exceptions of law to the report of the auditor, which are fully set out in the foregoing statement of facts. The trial judge overruled the first of these exceptions, and sustained those numbered from two to ten, inclusive. The second, third, fourth, and tenth of these exceptions are, in substance, (2) that the statement in the finding of facts that the plaintiffs had used due diligence in keeping the bonds of the city, for which they are sought to be charged in this case, in a safe place,

is no finding of fact at all; due diligence being a relative term, and there being no other facts found indicating what degree of diligence was used; (3) that the finding that the First National Bank of Sparta was the acknowledged and authorized depository of the City of Sparta, though not made so by any formal action of the mayor and council, is a legally impossible fact, there being no such thing known to the law as an acknowledged and authorized depository of the City of Sparta; and it is immaterial, and has nothing to do with plaintiffs' responsibility; (4) that the finding of the auditor that the plaintiffs were not duly notified by the treasurer of the City of Sparta of deposits placed in the First National Bank of Sparta to the credit of the plaintiffs, and that the plaintiffs made proper inquiries of the officers, agents, and employees of said bank and of the treasurer of the City of Sparta to find out whether or not any funds were in said bank or on hand for the plaintiffs as bond commissioners, when the latter were informed by the officers, agents, and employees of said bank and by the treasurer of said city that there was no money to the credit of the bond commission, or with said treasurer for the bond commissioners' use, was immaterial, and plaintiffs were bound to have knowledge of the funds and assets committed to their charge; and (10) " the auditor should have found and reported that plaintiffs as bond commissioners of the City of Sparta were chargeable in favor of said City of Sparta, on account of the sinking-fund which should be in their hands, in the following sums to wit, $9,000 on account of bonds lost, with interest thereon at the rate of seven per cent. per annum from March 27, 1915, and the further sum of $4318.23 on account of moneys lost, with interest at the rate of seven per cent. per annum on $766.45 from January 1st, 1913, on $2651.78 from January 1st, 1914, on $450.00 from July 1st, 1914, on $450 from July 1st, 1915; and that the judgments to be rendered against the First National Bank of Sparta, Robert Holmes, and the Third National Bank of Atlanta, in favor of plaintiffs for the use of said city, should be held and deemed to be as collateral for the judgment as against said plaintiffs." The exceptions of law numbered five to nine, inclusive, are exceptions to certain statements and reasons assigned by the auditor for his findings of fact. The plaintiffs except to the judgment of the court sustaining the exceptions of law filed by the City of Sparta from two to ten, in-

clusive. This brings us to consider the vital question in this case, and to define the liability of these plaintiffs, as bond commissioners of the City of Sparta, for the loss of the sinking-fund of this city.

Section 19 of the charter of the City of Sparta provides that " said mayor and aldermen, in council assembled, are hereby authorized to elect or appoint a bond commission, consisting of three citizens of said city, who shall serve without compensation, to whom the secretary and treasurer of said city shall turn over the sinking-fund now on hand in the treasury of said city and the additional sum of five hundred dollars on the 1st day of January hereafter so long as a sinking-fund is required to meet the bonded indebtedness of said city, and from year to year so long as said necessity exists therefor; who shall loan the same to the best advantage of said city at not less than six per cent. interest per annum, taking good and sufficient security therefor, subject to the approval of the mayor and aldermen, to meet the bonded indebtedness of said city, and shall report each loan made to the mayor and aldermen for their approval, and that a record thereof may be made on the minutes of the council. Said bond commissioners shall collect and pay over to the secretary and treasurer of said city annually the interest on all loans made by them, which shall be first applied to any deficiency in the sinking-fund, if any, and then to become a part of the general fund of said city. If any additional amount of bonds should be issued and floated by said city, the sinking-fund provided for their redemption shall in the same way be paid over to said bond commission, and by them so applied and the interest so applied. Said bond commission shall be perpetual, and all vacancies from death or removal from the city or otherwise therein filled by the mayor and aldermen." Under this provision the plaintiffs and John D. Walker, on or about May 1, 1906, were elected members of said bond commission, and have since continued such, with the exception of Walker, who absconded on September 27, 1917. No vacancy was declared or filled by reason of the absconding of said Walker; and the plaintiffs since then have been and are now the sole acting members of said commission.

Under this law are the plaintiffs public officers? An individual who has been appointed or elected in a manner prescribed by law, who has a designation or title given him by law, and who exercises functions concerning the public, assigned to him by the law, is a

public officer. *Bradford* v. *Justices,* 33 *Ga.* 332. Any man is a public officer who is appointed by the government and has any duty to perform concerning the public. Nor does it matter that this duty is confined to narrow limits. *Polk* v. *James,* 68 *Ga.* 128. An office is a particular station or employment conferred by the appointment of a government; and embraces the ideas of tenure, duration, emolument and duties. U. S. *v.* Hartwell, 73 U. S. 385 (18 L. ed. 830). The plaintiffs fall within the above definition of public officers. What duties were these bond commissioners to perform? The secretary and treasurer of the city was required to turn over to them the sinking-fund on hand at the time of their appointment, and the additional sum of $500 on the first day of each January thereafter so long as the sinking-fund was required to meet the indebtedness of said city. At first they were to loan this sinking-fund to the best advantage of said city at not less than six per cent. interest, taking good and sufficient security therefor, subject to the approval of the mayor and aldermen, to meet the bonded indebtedness of said city, and were required to report each loan made to the mayor and aldermen for their approval. They were required to collect and pay over to the secretary and treasurer of said city annually the interest on all loans made by them, which was to be applied first to any deficiency in the sinking-fund, and the balance, after supplying such deficiency, then to become a part of the general fund of said city. If any additional bonds were issued by the city, the sinking-fund provided for their redemption was to be paid over to said bond commission, and by them so loaned, and the interest so applied. Said bond commission was made perpetual, and vacancies from death or removal from the city or otherwise were to be filled by the mayor and aldermen.

The above provisions of the charter of said city contemplated and required that the bond commission should have the custody of said sinking-fund and the custody of the securities in which the same was invested. It was their duty to collect the interest on loans made, and first apply such interest to any deficiency in the sinking-fund, and to pay over any surplus of such interest, after replenishing the sinking-fund, to the secretary and treasurer of the city. The faithful discharge of these duties necessarily required the bond commissioners to have custody of the sinking-fund and of the investments made thereof. By the act of August 13, 1910 (Ga. Laws

1910, p. 100), it is provided that every officer or officers of any municipal corporation in this State, charged with the custody of its sinking-funds, are required, under the direction of the mayor and council of such municipal corporation, or duly constituted and authorized committee of the same, to invest, within six months from the collection of the same, all sums collected by such municipal corporation, under the requirements of paragraph 2 of section 7 of article 7 of the constitution of this State, for the purpose of the payment of the principal of the bonded indebtedness of such municipality, and which is not actually payable within the twelve months from the date of the collection thereof, in valid outstanding bonds of such municipality, or some other municipality of this State of equal or larger size, which have been duly validated in accordance with law, or county bonds of this State which have been duly validated, or valid outstanding bonds of this State or the United States, and to keep such funds so invested in such bonds, with the privilege of changing the investment from one character of the bonds named to another from time to time as the mayor and council may direct, until such time before the maturity of outstanding obligations as may be necessary to dispose of the same in order to meet such obligations at maturity. Under the provisions of this act the plaintiffs were in duty bound to invest all moneys coming into their custody, within six months from the collection of the same, in the securities specified, under the direction of the mayor and council of the City of Sparta, or a duly constituted and authorized committee of the same. By this act the plaintiffs were further required to have the bonds in which such sinking-fund was invested forthwith registered in the name of the municipality, provided such bonds by their terms, under the condition of their issuance, were capable of being registered in the name of the owner. Under such circumstances it became the duty of the plaintiffs to see that the bonds in which they had invested the sinking-fund of this city were forthwith registered. Being public officers, entrusted with the custody and investment of the sinking-fund of said city, and the safekeeping of the securities in which said sinking-fund is invested, what is the measure of their liability for the loss of said sinking-fund and the securities in which the same was invested by them?

This court has held that " If a sheriff collect money, and of

his own accord deposits the money in a bank which fails, he is liable to respond to the plaintiff." *Phillips* v. *Lamar,* 27 *Ga.* 228 (73 Am. D. 731). In the case cited this court further said: "The sheriff had collected the plaintiff's money, and without authority from him, and of his own accord, had placed it on deposit in bank as sheriff. It was put in bank on general deposit. Such a deposit creates the relation of debtor and creditor, between the bank and the depositor. It is not a bailment; for the bank has a right to use the deposit as its own money, and is liable to pay on demand, and no interest accrues but from the time of demand and refusal to pay. It is a loan." This court further said: "If a sheriff collect money on an execution and put it in a trunk under his bed, and it is stolen while he is asleep, he is liable to account to the plaintiff in fi. fa. for the loss." *Gilmore* v. *Moore,* 30 *Ga.* 628. In that case this court further said: "Either the plaintiff or the sheriff must sustain the loss. The sheriff voluntarily assumes the responsibilities of his office. Amongst the rest, if he lose money which he has collected, he must account for it. The plaintiff has no option. He is compelled to entrust to the sheriff the collection of his debt. He has no choice. It is conceded, and the books show it, that by the English law the sheriff is liable. We see nothing in our statutes or the condition of the country to excuse him. His mode of keeping money was very insecure, to say the least of it. An accidental fire would have consumed it. Thieves did break through and steal, without doing any act of violence, or even disturbing the slumbers of the officer. It was the least he could have done to keep an iron safe, or some secure place, for the preservation and protection of money and the valuable papers constantly in his custody."

A receiver having money in his possession, awaiting the result of litigation, can not part with the custody thereof by depositing it in a bank or otherwise, save at his own risk, without some order, leave, or direction of a court authorizing him so to do. A general deposit of such funds in bank is a loan, although entered to his credit in the bank as receiver; and although the loan is made in good faith, the receiver will still be liable. His diligence is to be exercised in keeping the money, not in putting it out on deposit, either general or special. *Ricks* v. *Broyles,* 78 *Ga.* 610 (3 S. E. 772, 6 Am. St. R. 280). In the case just cited this court said: " His poundage or

commissions are compensation for his risk, which is that of an official bailee for reward; and while he may not be bound for more than ordinary diligence, his diligence is to be exercised in keeping the money, not in putting it out on deposit, either general or special."

When a county treasurer makes a general deposit of the funds of the county in a bank, which are lost on account of the subsequent failure of the bank, he is liable therefor on his bond as treasurer, although he believed the bank solvent at the time of the deposit, and up to the time of its failure, and it was so regarded and reputed by the public. *Lamb* v. *Dart,* 108 *Ga.* 602 (6) (34 S. E. 160). In the last-cited case this court said: " Such general deposits in bank really create the relation of debtor and creditor between the bank and the depositor. It therefore simply amounts to a loan to the bank. With the same reason might it be contended by a public official that he is relieved from liability for public funds in his hands because he loaned it to an individual in the utmost good faith, and with the honest belief that the borrower was perfectly solvent. Public policy will not tolerate such a defense by a public official. It is true the rule of law which is announced in this case may in some instances operate harshly, but a county treasurer when he accepts his office takes it with all of its responsibilities and its perils. Among these responsibilities is the safekeeping and the proper disposition of the county funds that go into his hands; and among the perils he assumes is the liability of its loss, whether he keeps it himself or deposits it in bank; and when it is lost, especially when the loss results from the failure of another with whom he has deposited the fund without authority of law, there has been a breach of his bond, and he is liable to the county for the loss. These views are sustained by an overwhelming weight of judicial decisions rendered by various courts of last resort in this country. Indeed the trend of adjudications upon the subject leads to the conclusion that a loss by an official of public money intrusted to his care can not be excused unless it be the result of the act of God or the public enemy. Repeatedly has it been ruled that the taking of such funds by a thief, or its seizure by a robber, or its consumption by fire, much less the failure of a bank, unaccompanied at that with any negligence on the part of the official, will not constitute a valid defense for a failure to account for the money."

As stated above by this court, the rule, although it may operate harshly in some cases, as it does in the one at bar, has been adopted by a majority of the courts of last resort in this country. U. S. *v.* Prescott, 3 How. 578 (11 L. ed. 734) ; U. S. *v.* Morgan, 11 How. 154 (13 L. ed. 643) ; U. S. *v.* Dashiel, 4 Wall. 182 (18 L. ed. 319) ; U. S. *v.* Keehler, 9 Wall. 83 (19 L. ed. 574) ; Boyden *v.* U. S., 13 Wall. 17 (20 L. ed. 527) ; Bevans *v.* U. S., 13 Wall. 56 (20 L. ed. 531) ; Halliburton *v.* U. S., 13 Wall. 63 (20 L. ed. 533) ; U. S. *v.* Morrison, Chase, 521 (Fed. Cas. No. 15,817) ; Smythe *v.* U. S., 188 U. S. 156 (23 Sup. Ct. 279, 47 L. ed. 425) ; U. S. *v.* Bosbyshell, 73 Fed. 616, 77 Fed. 944 (23 C. C. A. 581) ; U. S. *v.* Bryan, 82 Fed. 290, 90 Fed. 473 (33 C. C. A. 617, 53 L. R. A. 218) ; Alston *v.* State, 92 Ala. 124 (9 So. 732, 13 L. R. A. 659) ; U. S. *v.* Griswold, 9 Ariz. 304 (80 Pac. 317) ; State *v.* Croft, 24 Ark. 550; State *v.* Newton, 33 Ark. 276; State *v.* Wood, 51 Ark. 205 (10 S. W. 624) ; Gartley *v.* People, 24 Colo. 155 (49 Pac. 272) ; Clay County *v.* Simonsen, 1 Dak. 403 (46 N. W. 592) ; Thompson *v.* Township 16, 30 Ill. 99; Cicero *v.* Grisko, 240 Ill. 220 (88 N. E. 478) ; Halbert *v.* State, 22 Ind. 125; Morbeck *v.* State, 28 Ind. 86; Rock *v.* Stinger, 36 Ind. 346; Inglis *v.* State, 61 Ind. 212; Linville *v.* Leininger, 72 Ind. 491; Taylor Dist. Tp. *v.* Morton, 37 Iowa, 550; Bluff Creek Dist. Tp. *v.* Hardingbrook, 40 Iowa, 130; Lowry *v.* Polk County, 51 Iowa, 50 (49 N. W. 1049, 33 Am. R. 114) ; Independent District *v.* King, 80 Iowa, 497 (45 N. W. 908) ; Rose *v.* Douglass Tp., 52 Kan. 452 (34 Pac. 1046, 39 Am. St. R. 354) ; Hancock *v.* Hazzard, 12 Cush. 112 (59 Am. D. 171) ; Hennepin County *v.* Jones, 18 Minn. 199; McLeod County *v.* Gilbert, 19 Minn. 214; Redwood County *v.* Tower, 28 Minn. 45 (8 N. W. 907) ; Board of Education *v.* Jewell, 44 Minn. 427 (46 N. W. 914, 20 Am. St. R. 586) ; State *v.* Bobleter, 83 Minn. 479 (86 N. W. 461) ; Griffin *v.* Miss. Levee Com'rs, 71 Miss. 767 (15 So. 107) ; Adams *v.* Lee, 72 Miss. 281 (16 So. 243) ; Arnold *v.* State, 77 Miss. 463 (27 So. 596, 78 Am. St. R. 533) ; State *v.* Gatzweiler, 49 Mo. 17 (18 Am. R. 119) ; State *v.* Gates. 67 Mo. 139 ; State *v.* Powell, 67 Mo. 395 (29 Am. R. 512) ; State *v.* Moore, 74 Mo. 413 (41 Am. R. 322) ; Ward *v.* School District No. 15, 10 Neb. 293 (4 N. W. 1001, 35 Am. R. 477) ; Bush *v.* Johnson County, 48 Neb. 1 (66 N. W. 1023, 32 L. R. A. 223, 58 Am. St. R. 673) ; Thomssen *v.* Hall County, 63 Neb. 777 (89 N. W. 389, 57

L. R. A. 303) ; State *v.* Nevin, 19 Nev. 162 (7 Pac. 650, 3 Am. St.
R. 873) ; New Providence *v.* McEachron, 33 N. J. L. 339; U. S. *v.*
Watts, 1 N. M. 562; Maloy *v.* Bernalillo County, 10 N. M. 638 (62
Pac. 1106, 52 L. R. A. 126) ; Tillinghast *v.* Merrill, 151 N. Y.
135 (45 N. E. 375, 34 L. R. A. 678, 56 Am. St. R. 612) ; People *v.*
Treanor, 15 App. Div. 508, 44 N. Y. Supp. 528) ; Muzzy *v.* Shat-
tuck, 1 Den. (N. Y.) 233; Oneida *v.* Thompson, 92 Hun (N. Y.),
16 (37 N. Y. Supp. 889) ; Yawger *v.* American Surety Co., 212
N. Y. 292 (106 N. E. 64, L. R. A. 1915D, 481, 484) ; Bladen
County *v.* Clarke, 73 N. C. 255; Havens *v.* Lathene, 75 N. C. 505;
Cox *v.* Blair, 76 N. C. 78; Smith *v.* Patton, 131 N. C. 396 (42 S.
E. 849, 92 Am. St. R. 783) ; State *v.* Harper, 6 O. St. 607 (67
Am. D. 363) ; Van Trees *v.* Territory, 7 Okla. 353 (54 Pac. 495) ;
Com. *v.* Comly, 3 Pa. 372; Nason *v.* Poor Directors, 126 Pa. St.
445 (17 Atl. 616) ; Com. *v.* Bailey, 129 Pa. St. 480 (10 Atl. 764) ;
Boggs *v.* State, 46 Tex. 10; Wilson *v.* Wichita County, 67 Tex. 647
(4 S. W. 67) ; Poole *v.* Burnet County, 97 Tex. 77 (76 S. W. 425) ;
Coe *v.* Foree, 20 Tex. Civ. App. 550 (50 S. W. 616) ; Mecklenburg
County *v.* Beales, 111 Va. 691 (69 S. E. 1032, 36 L. R. A. (N. S.)
285) ; ·Fairchild *v.* Hedges, 14 Wash. 117 (44 Pac. 125, 31 L. R.
A. 851) ; Kittitas County *v.* Travers, 16 Wash. 528 (48 Pac. 340) ;
Omro *v.* Kaime, 39 Wis. 468.

In some of the above cases the rule is based upon public policy.
U. S. *v.* Prescott, Mecklenburg County *v.* Beales, Tillinghast *v.*
Merrill, supra; Cameron *v.* Hicks, 65 W. Va. 484 (64 S. E. 832,
17 Ann. Cas. 926). In some, stress is put upon the fact, that the
actions were on official bonds in which the officers obligated them-
selves to account for all moneys which come into their custody;
and that nothing would relieve them for non-compliance with such
stipulations. Ward *v.* School Dist. No. 15, Oneida *v.* Thompson,
supra; Gartley *v.* People, 28 Colo. 227 (64 Pac. 208) ; Bush *v.*
Johnson, 48 Neb. 1 (66 N. W. 1023, 32 L. R. A. 223, 58 Am. St.
R. 673) ; State *v.* Hill, 47 Neb. 456 (66 N. W. 541) ; Hart *v.* Pitts-
burg, 81 Pa. 466; Montgomery County *v.* Cochran, 121 Fed. 17,
1020 (57 C. C. A. 261, 679) ; *Lamb* v. *Dart,* supra. In other cases
the officers' liability is made to depend either wholly or in part upon
statutes or bonds, or both. Fairchild *v.* Hedges, Com. *v.* Bailey,
supra. In other adjudications it is held that the liability of a
public officer charged with the custody of public funds is greater

than that of a mere bailee. Ramsey *v.* People, 197 Ill. 572 (64 N. E. 549, 90 Am. St. R. 177) ; *Lamb* v. *Dart,* Inglis v. State, State *v.* Powell, supra; U. S. *v.* Thomas, 15 Wall. 337 (21 L. ed. 89). The Supreme Court of the United States declares that the duty of a public officer to account for moneys received by him is absolute, and admits of no excuse, except probably the act of God, or the public enemy. Smythe *v.* U. S., 188 U. S. 156 (23 Sup. Ct. 279, 47 L. ed. 425). But upon whatever grounds the decisions are put, the overwhelming majority of the highest courts of the land adopt the rule above stated; and this court has followed the majority rule.

As on all other questions which perplex the courts, there are well-considered cases in which the contrary rule is announced; but in those cases public officers are held to reasonable skill, prudence and diligence. Healdsburg *v.* Mulligan, 113 Cal. 205 (45 Pac. 337, 33 L. R. A. 461) ; Livingston *v.* Woods, 20 Mont. 91 (49 Pac. 437) ; York County *v.* Watson, 15 S. C. 1 (40 Am. R. 675) ; State *v.* Gramm, 7 Wyo. 329 (52 Pac. 533, 40 L. R. A. 690) ; Roberts *v.* Laramie County, 8 Wyo. 177 (56 Pac. 915) ; State *v.* Copeland, 96 Tenn. 296 (34 S. W. 427, 31 L. R. A. 844, 54 Am. St. R. 840) ; Fentress County *v.* Reed, 116 Tenn. 110 (95 S. W. 809).

2. But it is earnestly insisted by counsel for the plaintiffs, that the latter are not liable for the bonds in which portions of the sinking-fund was invested, and for that portion of the fund not invested, because the auditor found that they were deposited in the First National Bank of Sparta by the bond commission; that this bank was the acknowledged and authorized depository of the City of Sparta, notwithstanding there was no formal action taken by the mayor and council declaring this bank to be such depository; that the plaintiffs were not duly notified by the treasurer of the City of Sparta of the deposits made with the First National Bank of Sparta, and placed to their credit, the plaintiffs having made proper inquiry of the officers and employees of said bank, and the treasurer of the city, to find out whether any funds were in bank or on hand for the bond commission, and were informed by the officers of the bank and by said treasurer that there was no money to the credit of the bond commission in said bank or with said treasurer for their use; that the plaintiffs had nothing to do with the removal or the conversion of the bonds, and were not instrumental in drawing out from said bank the money therein deposited

to the credit of the bond commission. None of these facts would excuse the plaintiffs and relieve them from liability for this sinking-fund. They were made the custodians of this fund, and neither this bank nor the City of Sparta was charged with the safekeeping thereof and its due investment. The fact that the plaintiffs deposited this money in the same bank in which the City of Sparta deposited its funds will not relieve the plaintiffs from liability. The fact that the city officials might have had knowledge of the deposit of the bonds and the money constituting this sinking-fund in this bank, without objection or protest, does not excuse these officials. It is not pretended that there was any formal action of the mayor and council of the City of Sparta authorizing the plaintiffs to deposit these bonds and this money in this bank.

Neither the advice nor direction of either the State superintendent of public instruction, the school commissioner, or the county board of commissioners, as to the deposit of money, would discharge a township trustee from liability for loss caused by the subsequent failure of the bank; the court saying that he had the custody and control of the money, and that it was for him and him alone to determine where and in what manner it should be kept. Inglis v. State, 61 Ind. 212 (supra). A township trustee, who kept the township money on deposit in a bank with the knowledge and consent of the township board, was held liable when the bank failed and such money was lost. Rose v. Douglass Township, 52 Kan. 451 (supra). The direction of the county commissioners' court to the county treasurer, to deposit county funds in a particular bank, would not exonerate the treasurer's bond from liability for loss thereof through the subsequent failure of the bank, where by statute the treasurer was made custodian of such funds, since to allow the county commissioners' court to direct as to the custody of the funds would abrogate the statute. McKinney v. Robinson, 84 Tex. 489 (19 S. W. 699). Where the deposit was made with the knowledge, consent, and approval of the county commissioners, the same conclusion was reached by a similar process of reasoning. Kittitas Co. v. Travers, 16 Wash. 528 (supra). A town treasurer can not relieve himself from liability on a bond obligating him to pay over all county funds, by showing that he was directed by the board of trustees to cash tax warrants at the failing bank, when the board did not direct to keep the funds in such bank. Cicero v. Grisko,

240 Ill. 220 (supra). A city tax-collector under bond to pay over "all moneys" coming into his hands as tax-collector was held not relieved from liability on his bond for taxes lost through the failure of a bank in which he had deposited them at the city's risk, at the direction of the mayor and finance committee of the city council, when it appeared that the charter authorized the council to prescribe the collector's duties, and there was no ordinance authorizing such action by the mayor and finance committee. Adams *v.* Lee, 72 Miss. 281 (supra).

3. But the plaintiffs insist, that there is a difference in the degree of diligence which public officers must exercise in taking care of property entrusted to their keeping, and that which they must employ in handling public moneys which come into their hands. Where public property, other than money, is entrusted to an officer, the latter may occupy the position of bailee of the government, and be only bound to due diligence and only liable for negligence or dishonesty. U. S. *v.* Thomas, 82 U. S. 337 (supra). But the position of an officer who is entrusted with public money for investment in negotiable bonds, which pass by delivery, and which he must safely keep and account for, is in no way different from that of an officer who is entrusted with public moneys for safekeeping. In principle and on sound reasoning, the liability is the same. In the case where the public officer is entrusted with public funds for investment in bonds, and he makes the investment but entrusts the safekeeping thereof to a bank, and the same are lost, there is as good reason for holding the officer liable for their loss as there is for holding him liable for the loss of such money when deposited in bank and the same becomes a loss by the bankruptcy of the depository or the dishonesty of its officials. The real ground of liability is that under the law the safekeeping of such bonds is entrusted to the bond commissioners, who can not delegate their safekeeping to another.

4. We come next to consider the question whether the court erred in that portion of the decree which adjudged that the plaintiffs were liable for the sinking-fund of the City of Sparta, amounting to the sum of $17,235.87. It is urged by the plaintiffs, that, under the findings of fact by the auditor which were duly approved by the court, no decree could be entered against them for said sinking-fund, there being no verdict of a jury, the whole case having been

finally disposed of by the court on the report of the auditor, and the court's rulings on the exceptions filed thereto, and the findings of fact by the auditor not supporting so much of said decree as held the plaintiffs liable for said sinking-fund. The plaintiffs insisted that the findings of fact by the auditor not only will not support the portion of the decree finding against them, but demand a finding in their favor to the effect that they are not chargeable with, and liable for, said sinking-fund. On the other hand it is insisted by the City of Sparta that, under the facts found by the auditor, the plaintiffs, as members of the bond commission of said city, are liable for, and should be charged with, the investments actually made by them out of said sinking-fund, and for the portion thereof which they had not invested. This raises the question whether the chancellor can, upon the findings of fact by an auditor, which are approved by the court, render a decree against parties, different from the legal conclusion reached by the auditor in their favor under such findings of fact.

A decree is the judgment of the judge in equitable proceedings, upon the facts ascertained. Civil Code, § 5424; *Winn* v. *Walker,* 147 *Ga.* 427 (94 S. E. 468). In this State the jury and the judge constitute the chancellor. *Hargraves* v. *Lewis,* 3 *Ga.* 162. The facts are to be submitted to a jury, who have the exclusive right to pass upon them, and matters of law are for the court alone. This is what is meant by the language in the last-cited case. *Mounce* v. *Byars,* 11 *Ga.* 180. When the issues of both law and fact in an equity cause are referred to an auditor, the latter, in the first instance, takes the place of the jury and the judge, and is pro hac vice the chancellor. To his report exceptions can be filed, to be separately classified as exceptions of law and exceptions of fact. Civil Code, § 5135. When exceptions of law are filed they are for the exclusive consideration of the judge. § 5140. In equitable proceedings, if exceptions of fact are filed, and the judge approves the same, the same shall be submitted to the jury. § 5142. If the judge does not approve any exception of fact, the same becomes conclusive. The judge is not required, as a matter of course, to submit exceptions of fact to the jury. *DuBose* v. *Thomas,* 136 *Ga.* 673 (3) (71 S. E. 1106); *Mathewson* v. *Reed,* 149 *Ga.* 217 (2) (99 S. E. 854); *Upmago Lumber Co.* v. *Monroe,* 151 *Ga.* 801 (108 S. E. 369).

Under what circumstances can a judge in this State render a decree in an equity cause without a finding of facts either by a jury or by an auditor? At any stage in the progress of an equity cause, if any portion of the same is ready for, or requires, a decree, the court may hear and determine such matters, and pass such interlocutory decree or order as may advance the cause and expedite a hearing; and if no issue of fact is involved, the verdict of a jury is unnecessary. Civil Code, § 5420. An order directing a credit to be put on an execution, which the plaintiff admits he received, and then dissolving an injunction which stayed the execution, is not a decree which requires the intervention of a jury. *Cardin* v. *Jones*, 23 *Ga.* 175 (2). When there is an error of law apparent on the face of the auditor's report, wholly irrespective of the evidence on which it is based, then the court can correct such error by its judgment. *Brinson* v. *Wessolowsky*, 57 *Ga.* 143; *Anderson* v. *Usher*, 59 *Ga.* 577; *Wade* v. *Peacock*, 121 *Ga.* 816 (49 S. E. 826). When an auditor appointed to take an accounting between partners omits to include in his calculations an item which the undisputed evidence shows should be credited to one of the parties, and he takes proper exception to the omission of the auditor, such exception should be sustained by the court as a matter of course. *Murphey* v. *Bush*, 122 *Ga.* 715 (50 S. E. 1004).

In this case the plaintiffs did not except to the auditor's findings of facts, which related to the City of Sparta; but filed certain exceptions of law to these findings which in effect amount to a demurrer to the sufficiency of such findings to relieve the plaintiffs from liability. In other words, the City of Sparta, admitting the facts as found by the auditor to be true, by its exceptions of law asserts that the plaintiffs are liable for the loss of its sinking-fund, in spite of these facts; and alleges that the auditor erred in finding that the plaintiffs were not liable under said facts. This ruling of the auditor, if erroneous, being an error of law apparent on the face of the auditor's report, the court could correct it by its decree. The latter would not be based upon facts not found by the auditor; but would amount to the correction of an erroneous judgment by the auditor based upon the facts found by him. The court can adopt the findings of fact by the auditor, and at the same time find that the auditor erred in the legal conclusion on such facts which he reached.

We do not consider other objections to the decree, because they are not insisted upon in the brief of counsel for plaintiffs.

. The judgment in the main bill of exceptions is *affirmed,* and the cross-bill of exceptions is therefore *dismissed.*

*All the Justices concur, except Gilbert, J., absent.*